UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Janice Kearney<br>Samantha Rodriguez<br>Gwendolyn Bird<br>Laurie Goldstein<br>On behalf of themselves and all others<br>similarly situated<br>　　Plaintiffs<br>v.<br>Cavalry Portfolio Services LLC<br>Cavalry SPV I LLC<br>Choi Law Office PLLC<br>Danielle C. Choi<br>Schahcter Portnoy, LLC<br>Craig Faye<br>John Does # 1 - 10<br>　　Defendants | Case No.:  1:12-cv-00860-DLI-RML<br><br>Oral Argument Requested |

PLAINTIFFS' RESPONSE IN OPPOSITION TO ALL DEFENDANTS' MOTIONS TO
DISMISS

Date of Service: September 10, 2012
　　　　　　(via email to all counsel)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.      INTRODUCTION (AND WHAT DEFENDANTS DO NOT DISPUTE)..................1

II.     STANDARD OF REVIEW...........................................................................2

III.    ALL DEFENDANTS VIOLATED THE FDCPA...............................................3

        A.      Public Policy of the FDCPA................................................................3

        B.      Plaintiffs have pled facts that make a "plausible claim" that the putative
                obligations they are sued upon were "debts" within the meaning of the FDCPA,
                15 U.S.C. § 1692a(5)..................................................................................3

        C.      CPS did not have a legal right to sue under its own name, a point even Cavalry
                does not challenge........................................................................................5

                (1)     An assignee must have title to the putative debt in order to have standing
                        to bring suit in its own name.............................................................5

                (2)     CPS did not have title to the putative debts, a fact it actively concealed
                        from consumers and from the courts....................................................5

                (3)     Renne does not control on this issue of CPS having title in this case, and
                        even Cavalry does not contend it does..................................................7

        D.      By bringing and litigating a collection lawsuit in the name of CPS Defendants
                violated the FDCPA, 15 U.S.C. 1692e, 1692e(2)(A) & (B), 1692e(10), 1692f, 1692f(1),
                especially given Defendants' affirmatively false representations...........................8

                (1)     Klein is not relevant because New York substantive law on assignment
                        controls......................................................................................12

                (2)     Bringing collection actions without complying with state law regarding
                        assignment constitutes the unauthorized practice of law, violating the FDCPA...14

        E.      Regardless of the issue of standing, Defendants violated the FDCPA by
                misidentifying the putative creditor as CPS instead of as SPV..............................15

                (1)     Defendants cannot "cure" their FDCPA violations...........................17

        D. PLAINTIFFS' FDCPA CLAIMS ARE NOT TIME-BARRED..........................17

(1)      Whether the accrual of the violation is upon the filing of the suit or the service of the suit is irrelevant to the case at bar because Defendants' sewer service and affirmative misrepresentations in the complaint and tolled the statute of limitations..................18

    (a)    Sewer service tolls the claims of Rodriguez and Goldstein I..............19

    (b)    Even absent sewer service, for Rodríguez and Goldstein I Defendants' affirmative misrepresentations in their complaint concealed the FDCPA violation, tolling those FDCPA claims until, at the earliest, additional facts were disclosed.....................................................................................19

        (i)    For Bird and Kearney, separate attempts to obtain judgment without legal capacity to do so should be separate violations of the FDCPA..............................................................................21

        (ii)   Plaintiffs also have independent FDCPA claims within one year of the filing of this federal action.................................................25

F.    DEFENDANTS VIOLATED GBL § 349.............................................26

    (1)    Defendants' acts or practices were consumer oriented......................26

    (2)    Defendants' conduct was materially misleading..............................30

    (3)    Defendants' actions caused harm................................................32

G.    THE LAW FIRM DEFENDANTS VIOLATED JUDICIARY LAW § 487......32

H.    THE NOERR-PENNINGTON DOCTRINE IS IRRELEVANT....................33

    (1)    The Noerr-Pennington doctrine and the "sham litigation" exception are inapplicable to FDCPA claims.........................................................34

    (2)    Defendants' conduct in any case rises to the level of "sham litigation"...37

    (3)    Holding Defendants accountable under the FDCPA for filing thousands of lawsuits in which it did not have standing is not an "absurd result"...............38

I.    THE COURT SHOULD NOT ABSTAIN UNDER COLORADO RIVER.......39

J.    PRAYER...................................................................................45

## Table of Authorities

Cases

Acosta v. James A. Gustino, P.A.,
    2012 WL 2017337 (11th Cir. June 6, 2012) ....................................... 41, 42

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,
    106 F.3d 11 (1997) ............................................................................ 5, 7

Ambrosia Coal & Constr. Co. v. Pages Morales,
    368 F.3d 1320 (11th Cir. 2001) ............................................................ 40

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................. 2

Axelrod v. New York State Teachers' Retirement Sys.,
    154 A.D.2d 827 (1989) ......................................................................... 9

Bailey v. Glover,
    88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874) ........................................... 19

Balt. Scrap Corp. v. David J. Joseph Co.,
    237 F.3d 394 (4th Cir. 2001) ..................................................... 34, 37, 38

Balsy v. West Michigan Debt Collections, Inc.,
    2012 WL 628490 (E.D. Va. Feb. 27, 2012) ..................................... 40, 41, 45

Baptist v. Global Holding & Inv. Co., LLC,
    2007 WL 1989450 (E.D.N.Y. 2007) ......................................................... 9

Barany-Snyder v. Weiner,
    2007 WL 210411 (N.D. Ohio Jan. 24, 2007) ............................................ 37

Beattie v. D.M. Collections, Inc.,
    754 F. Supp. 383 (D. Del. 1991) ............................................................. 9

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ............................................................................. 2

Bentley v. Great Lakes Collection Bureau, 6 F.3d 60 (2d Cir. 1993) ..................... 3

i

Bill Johnson's Restaurants, Inc. v. NLRB,
    461 U.S. 731 (1983) ............................................................................. 35

Blevins v. Hudson & Keyse, Inc.,
    395 F. Supp. 2d 655 (S.D. Ohio 2004) ................................................ 37

Bodur v. Palisades Collection, LLC,
    829 F. Supp. 2d 246 (S.D.N.Y. 2011) ..................................................... 4

Book v. Mortgage Electronic Registration Systems,
    608 F. Supp. 2d 277 (D. Conn. 2009) .................................................. 45

Bourff v. Rubin Lublin, LLC,
    674 F.3d 1238 (11th Cir. 2012) ..................................................... 16, 17

Burnett v. Physician's Online, Inc.,
    99 F.3d 72 (2d Cir. 1996) ................................................................... 43

Caidon v. Guardian Life Ins. Co. of Am.,
    94 N.Y.2d 330 (1999) ......................................................................... 26

Calabrese v. CSC Holdings, Inc.,
    2004 WL 3186787 (E.D.N.Y. July 19, 2004) ........................................ 34

California Motor Transp. Co. v. Trucking Unlimited,
    404 U.S. 508 (1972) ........................................................................... 34

Calka v. Kucker, Kraus & Bruh, LLP,
    1998 WL 437151 (S.D.N.Y. Aug. 3, 1998) ....................................... 23, 24

Carvel Farms Corp. v. Bartomeo,
    272 N.Y.S.2d 507 (Sup. Ct. 1965) ......................................................... 5

Cavalry Portfolio Servs., LLC v. Renne,
    2010 NY Slip Op 50615U, 1 (N.Y. App. Term 2010) ............................ 8, 38

Chase Breton Health Servs., Inc. v. Maryland,
    411 F.3d 457 (4th Cir. 2005) .............................................................. 39

Cirkot v. Diversified Fin. Sys., Inc.,
    839 F. Supp. 941 (D. Conn. 1993) ......................................................... 8

Citigroup Global Markets Realty Corp. v. Randolph Bowling,
    906 N.Y.S.2d 778 (N.Y. Sup. 2009) ...................................................... 10

Clomon v. Jackson,
    988 F.2d 1314 (2d Cir. 1993) ..................................................................... 9

Coble v. Cohen & Slamowitz, LLP,
    824 F. Supp. 2d 568 (S.D.N.Y. 2011) ................................................. 19, 22

Colorado River Water Conservation District v. United States,
    424 U.S. 800 (1976) ...................................................................... passim

Day v. Union Mines, Inc.,
    862 F.2d 652 (7th Cir. 1988) ................................................................ 40

Delawder v. Platinum Fin. Servs. Corp.,
    443 F. Supp. 2d 942 (S.D. Ohio 2005) ..................................................... 36

Deutsche Bank Nat. Trust Co. v. McRae,
    894 N.Y.S.2d 720 ............................................................................ 9, 10

Diaz v. Portfolio Recovery Associates, LLC,
    2012 WL 1882976 (E.D.N.Y. May 24, 2012) ........................... ........... passim

DIRECTV, Inc. v. Cavanaugh,
    321 F. Supp. 2d 825 (E.D. Mich. 2003) ................................................... 36

Dittmer v. County of Suffolk,
    146 F.3d 113 (2d Cir. 1998) ................................................................. 40

Eads v. Wolpoff & Abramson, LLP,
    538 F. Supp. 2d 981 (W.D. Tex. 2008) .................................................... 17

Fin. California, Inc. v. Lawyers Title Ins. Corp.,
    2010 WL 4876014 (D. Conn. Nov. 22, 2010) ........................................... 12

Foster v. D.B.S. Collection Agency,
    463 F. Supp. 2d 783 (S.D. Ohio 2006) ............................................... 14, 22

Freyermuth v. Credit Bureau Services, Inc.,
    248 F.3d 767 (8th Cir. 2001) .................................................................. 9

Gaidon v. Guardian Life Ins. Co. of Am.,
    96 N.Y.2d 201 (2001) .......................................................................... 27

Gionis v. Javitch, Block, Rathbone, LLP,

2007 WL 1654357 (6th Cir. June 6, 2007) ................................................ 36

Goins v. JBC & Assocs., P.C.,
    352 F. Supp. 2d 262 (D. Conn. 2005) ....................................................... 17

Hartman v. Asset Acceptance Corp.,
    467 F. Supp. 2d 769 (S.D. Ohio 2004) .................................................... 37

Hartman v. Great Seneca Fin. Corp.,
    569 F.3d 606 (6th Cir. 2009) ......................................................... 34, 36

Heintz v. Jenkins,
    514 U.S. 291 (1995) ............................................................... 34, 35, 38

Interpharm, Inc. v. Wells Fargo Bank, N.A.,
    655 F.3d 136 (2d Cir. 2011) ..................................................................... 2

Jacobson v. Healthcare Fin. Servs.,
    516 F.3d 85 (2d Cir. 2008) ...................................................................... 3

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,
    130 S. Ct. 1605 (2010) ........................................................................... 38

Johnson v. Riddle,
    305 F.3d 1107 (10th Cir. 2002) ............................................................. 18

Karlin v. IVF Am., Inc.,
    93 N.Y.2d 282 (1999) ............................................................................ 27

Kelly v. Great Seneca Fin. Corp.,
    443 F. Supp. 2d 954 (S.D. Ohio 2005) .................................................... 36

Kimber v. Fed. Fin. Corp.,
    668 F. Supp. 1480 (M.D. Ala. 1987) ............................................... 8, 9, 10

Klein v. Solomon & Solomon, P.C.,
    2011 WL 5354250 (D. Conn. Oct. 28, 2011) ............................................ 12

Kolker v. Duke City Collection Agency,
    750 F. Supp. 468 (D.N.M. 1990) ............................................................ 14

Kuhn v. Account Control Tech., Inc.,
    865 F. Supp. 1443 (D. Nev. 1994) .......................................................... 10

Lee v. Javitch, Block & Rathbone,
    484 F. Supp. 2d 816 (S.D. Ohio 2007) ...................................................... 36

Liberty Lake Invs. V. Magnuson,
    12 F.3d 155 (9th Cir. 1993) .............................................................. 37, 38

Marchant v. U.S. Collections West, Inc.,
    12 F. Supp. 2d 1001 (D. Ariz. 1998) ......................................................... 10

Martinez v. Albuquerque Collection Services,
    867 F. Supp. 1495 (D.N.M. 1994) ......................................................... 9, 14

Midland Funding, LLC v. Tagliafferro,
    33 Misc. 3d 937 (Sup. Ct. 2011) ............................................................. 31

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
    85 N.Y.S.2d 20 (1995) ......................................................................... 26

People v. Nationwide Asset Serv., Inc.,
    888 N.Y.S.2d 850 (S. Ct. Erie Cty. 2009) .................................................. 27

Perry v. Stewart Title Co.,
    756 F.2d 1197 (5th Cir. 1985) ................................................................. 8

Phifer v. Home Savers Cons. Corp.,
    2007 WL 295605 (E.D.N.Y. Jan. 30, 2007) ................................................ 26

Poirier v. Alco Collections, Inc.,
    107 F.3d 347 (5th Cir. 1997) ............................................................. 10, 14

Portfolio Recovery Assoc., LLC v. King,
    927 N.E.2d 1059 (N.Y. 2010) ................................................................. 14

Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,
    508 U.S. 49 (1993) ............................................................................. 35

Resurgent Capital Servs., LLC v. Mackey,
    32 Misc. 3d 265 (N.Y. Dist. Ct. May 2, 2001) ............................................. 17

Richstone v. Chubb Colonial Life Insurance,
    1999 WL 287332 (S.D.N.Y. May 7, 1999) .................................................... 5

Riordan v. Nationwide Mut. Fire Ins. Co.,
    977 F.2d 47 (2d Cir. 1992) .................................................................... 27

Rodriguez v. It's Just Lunch, Intl.,
    2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ............................................... 26

Sayyed v. Wolfpoff & Abramson,
    485 F.3d 226 (4th Cir. 2007) .................................................................. 34

Securitron Magnalock Corp. v. Schnabolk,
    65 F.2d 256 (2d Cir. 1995) .................................................................... 27

Shula v. Lawent,
    359 F.3d 489 (7th Cir. 2004) ................................................................... 4

Sierra v. Forster & Garbus,
    48 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................... 23, 24

Somin v. Total Cmty. Mgmt. Corp.,
    494 F. Supp. 2d 153 (E.D.N.Y. 2007) ...................................................... 19

Spencer v. Standard Metals & Chems Corp.,
    237 N.Y. 479 (1924) ........................................................................... 5, 7

Spagnola v. Chubb Corp.,
    574 F.3d 64 (2d Cir. 2009) .................................................................... 26

Sprinkle v. SB&C Ltd.,
    472 F. Supp. 2d 1235 (W.D. Wash. 2006) ................................................ 10

Stark v. Goldberg,
    297 A.D.2d 203 (2002) ........................................................................... 9

State of N.Y. v. Hendrickson Bros., Inc.,
    840 F.2d 1065 (2d Cir. 1988) ................................................................. 21

Stutman v. Chemical Bank,
    95 N.Y.2d 24 (2000) ..................................................................... passim

Suquilanda v. Cohen & Slamowitz, LLP,
    2011 WL 4344044 (S.D.N.Y. Sept. 8, 2011) ............................................. 16

Sykes v. Mel Harris & Assocs., LLC,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............................................... passim

Titus v. Wallick,

306 U.S. 282 (1939) ............................................................................. 5

Wadlington v. Credit Acceptance Corp.,
   76 F.3d 103 (6th Cir.1996) ...................................................................... 8

Wallace v. Washington Mut. Bank, F.A.,
   683 F.3d 323 (6th Cir. 2012) ................................................................. 15

Wells Fargo Bank v. Mastropaolo,
   42 A.D.3d 239 (2d Dept. 2007) ........................................................... 9, 38

Williams v. Javitch, Block & Rathbone,
   480 F. Supp. 2d 1016 (S.D. Ohio 2007) ..................................................... 36

### Statutes

15 U.S.C. § 1692, et seq. ......................................................................... *passim*

N.Y. CPLR § 1004 ............................................................................. *passim*

N.Y. GBL § 349 ................................................................................. *passim*

N.Y. Jud. Law § 487 ............................................................................ *passim*

### Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................. 2

### Other

S. Rep. No. 382, 95th Con., 1st Sess. 5 ............................................................. 2

New York County Lawyer's Assoc. Ethics Opinion No. 510 (1963) ...................... 14

New York County Lawyer's Assoc. Ethics Opinion No. 555 (1967) ...................... 14

Restatement (2d) of Agency 88 ..................................................................... 26

N.Y. Dept. of Law, Mem. to Governor, 1963 N.Y. Legis. Ann., at 105 .................. 27

I.  **INTRODUCTION      (AND      WHAT DEFENDANTS DO NOT DISPUTE)**

1.      This lawsuit involves the filing and litigating of thousands of illegal collection lawsuits by all Defendants in the name of Cavalry Portfolio Services. Through the coercion of illegal debt collection litigation under the name of Cavalry Portfolio Services, all Defendants inflicted damage on thousands of unsuspecting consumers in New York State. This damage to the class includes taking money from consumers under threat of litigation and threat of judgment and court costs when Defendants had no right to bring or prosecute these suits; and in engaging in post-judgment collection activities. The damage also includes the time spent and costs incurred by consumers to defend against meritless collection lawsuits that should never have been filed and should never have been prosecuted.

2.      The differences between Defendants' motions to dismiss the original complaint and the First Amended Complaint ("FAC"), as well as the differences between the Defendants' arguments are interesting. Cavalry[1] does not argue that CPS had the legal right to file collection lawsuits in its own name. Cavalry does not dispute (or acknowledge) that the filing of a debt collection lawsuit by a servicer who did not own title to the putative debt violates the FDCPA.[2] SP[3] and Choi[4] both argue that CPS in fact had standing to file suit in its own name, a position Cavalry does not take. SP and Choi argue filing suit in the name of a servicer who does not own title to the alleged debt does not violate the FDCPA, a position Cavalry does not take. However,

_____

1 Collectively Cavalry Portfolio Services LLC ("CPS") and Cavalry SPV I LLC ("SPV I").
2 Cavalry originally argued that it could not be liable for the debt collection violations it commits through debt collection litigation because its litigation was done through debt collection law firms. Only those debt collection law firms could be liable for FDCPA violations, Cavalry originally argued. DE 31-1 pp. 13 – 15. Cavalry has abandoned that argument in its in its motions to dismiss Plaintiffs' First Amended Complaint ("FAC").
3 Collectively Schahcter Portnoy, LLC and Craig Faye.
4 Collectively Choi Law Office PLLC and Danielle C. Choi.

1

all Defendants argue that the same conduct -- the filing suit in the name of the servicer who does

not own the debt -- does not violate GBL 349. SP and Choi both argue that FDCPA the claims of

Kearney, Rodriguez, Bird, and Goldstein I are time barred, while Cavalry argues only that the

claims of Kearney and Bird are time barred. All Defendants argue they have not violated

Judiciary Law 487, but for different reasons. SP and Choi argue, for different reasons, that they

did not violate the FDCPA if there was sewer service in the collection lawsuit, but Cavalry

makes no such argument.

## II.   STANDARD OF REVIEW

3.  For a Fed. R. Civ. P. 12(b)(6) motion, the Court "assum[es] all facts alleged within the four

corners of the complaint to be true, and drawing all reasonable inferences in plaintiffs favor."

Interpharm, Inc. v. Wells Fargo Bank, N.A., 655 F.3d 136, 141 (2d Cir. 2011). "A complaint must

contain enough 'factual content' to allow a court 'to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" Interpharm, Inc. at 141-42, See also Ashcroft v.

Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (holding that a claim will have

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged"). A court may not

dismiss a complaint because it disbelieves the plaintiff's factual allegations. See Twombly, 550 U.S.

at 556. In fact, "a well pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." Id.

(internal quotation marks omitted).

## III.  ALL DEFENDANTS VIOLATED THE FDCPA

### A.   Public Policy of the FDCPA

4.   The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt

2

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiffs – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance.") and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."). The FDCPA is a strict liability statute. Bentley v. Great Lakes Collection Bureau, 6 F.3d 60 (2d Cir. 1993) ("The FDCPA is a strict liability statute . . . and the degree of a defendant's culpability may only be considered in computing damages...");

> **B. Plaintiffs have pled facts that make a "plausible claim" that the putative obligations they are sued upon were "debts" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5).**

5. Cavalry contends Plaintiffs have not alleged facts to make a "plausible claim" that the putative obligations they were sued upon were "debts" with the meaning of the FDCPA, 15 U.S.C. § 1692a(5). The FAC incorporated by reference (¶ 25) the pleadings in the underlying collections lawsuits. The representations made by Cavalry by its law firms in the summons, the verified complaint, and the affidavit of facts in support of default judgment are all facts that state a plausible claim that the putative obligation was a "debt" under the FDCPA.

6. In its *verified* collection lawsuit complaints as to all named Plaintiffs, Cavalry (and its collection law firms) attest that CPS' primary business activity is "the purchase of consumer

3

receivables"; that CPS, through assignment, is the lawful owner of "a consumer credit contract executed by" the consumer; that CPS sues the consumer for "the reasonable value of the goods sold and delivered, and/or services rendered by the Plaintiff [CPS], its agents, servants, and/or employees to the Defendant(s) [the consumer], upon the promise by the Defendant(s) to pay a reasonable price for same." The summons for each complaint is also entitled "**CONSUMER CREDIT TRANSACTION**" (emphasis in the original). DE 45-1 pp. 2 – 5 (Rodriguez), 41 – 44 (Kearney), 65 – 67 (Bird), 119 – 122 (Goldstein I), 147 – 150 (Goldstein II).[5]

7.      When CPS moved for default judgment against Rodriguez (later vacated), a "Legal Administrator" of CPS signed an *affidavit* of facts in support of the default judgment attesting, upon "personal knowledge," that the Rodriguez had "money due" to CPS for "goods sold and delivered and/or services rendered by" CPS "upon the promise by [Rodriguez] to pay an agreed upon amount" and for money due "for the reasonable value of the goods sold and delivered and/or service rendered by" CPS. DE 45-1 p. 12 (Rodriguez). The collection lawsuits alleged a personal obligation for each of the named Plaintiffs: a Washington Mutual account for Kearney; an HSBC personal credit card for Bird (DE 45-1 pp. 99 – 105); FIA Card Services credit cards for Goldstein I & II (DE 45-1, p. 120, 148); and a loan for the purchase of an automobile for Rodriguez (DE 45-1, p. 23).[6]

8.      The fact that the obligation CPS sought to enforce against Rodriguez was an out-of-state judgment is irrelevant. The definition of "debt" explicitly states it applies to obligations "whether

5 In addition, Cavalry's affirmative representations that the obligation is putative consumer obligation estops Cavalry from arguing to the contract in this action. Shula v. Lawent, 359 F.3d 489, 490 (7th Cir. 2004) ("Lawent himself described the costs in his dunning letter to the plaintiff as a "debt," and he should doubtless be estopped to repudiate that characterization.")
6 In Bodur, a decision all Defendants cited for a different proposition in their original or current motions to dismiss, the court held that because the debt collector had "all the relevant information and documents describing the nature of the underlying debt." Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 257 (S.D.N.Y. 2011).

or not such obligation has been reduced to judgment." The out-of-state judgment was based on the loan for the purchase of an automobile. (DE 45-1 p. 23) (Putative retail installment sales contract). The putative car loan does not cease to be a debt simply because the obligation is reduced to judgment.

## C.   CPS did not have a legal right to sue under its own name, a point even Cavalry does not challenge.

### (1) An assignee must have title to the putative debt in order to have standing to bring suit in its own name.

9.      Under New York law, for an assignee to have standing and capacity to sue, the assignee must be the "real party in interest,"[7] which means that the assignee "must have some title, legal or equitable, to the thing assigned."[8] Merely granting the power to sue on or enforce a claim or set of claims is not enough for a valid assignment.[9] Essential to an assignment is that the assignor is *entirely* divested of all control over the thing assigned.[10] In Spencer an instrument giving an attorney the "power to commence or prosecute any suit or action or other legal proceedings for the recovery of damages, debts, demands, choses in action, causes or things whatsoever" did not suffice to show that legal title to the claim had actually been assigned.[11]

### (2) CPS did not have title to the putative debts, a fact it actively concealed from consumers and from the courts.

---

7 *See Carvel Farms Corp. v. Bartomeo*, 272 N.Y.S.2d 507, 510 (Sup. Ct. 1965) (despite CPLR § 1004 supplanting the explicit use of "real party in interest" in § 210 of the old Civil Practice Act, the real party in interest requirement was not "stricken from the law" and it has since become a requirement of substantive law).

8 *Spencer v. Standard Metals & Chems Corp.*, 237 N.Y. 479, 480-81 (1924). *Spencer* interpreted the phrase "real party in interest" under § 210 of the old Civil Practice Act. § 210's successor provision, CPLR § 1004, provides an enumerated list of representatives who may bring suit by or against a party.

9 *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (1997) ("The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name") (citing *Titus v. Wallick*, 306 U.S. 282, 289 (1939)).

10 *Richstone v. Chubb Colonial Life Insurance*, 1999 WL 287332 *6 (May 7, 1999, S.D.N.Y.).

11 *Spencer*, at 481-82.

5

10.     All of the collection lawsuits filed in the name of CPS are verified and state (falsely), "Plaintiff [CPS], through assignment, is the lawful *owner* of a consumer credit contract executed by the Defendant(s)" (emphasis added). The additional documents that demonstrate the falsity of this statement are not produced by Defendants until long after the filing of the summons and complaint.

11.     The assignments from the putative original creditors to the SPV transferred *all of Seller's* [DaimlerChrysler] *right, title and interest* in and to each of the Accounts." (¶ 47). However, the assignments from SPV to CPS only transferred "all of Assignor's rights *to pursue collection or enforcement of judicial enforcement* of obligations for each of the Assignor's accounts... including engagement of attorneys and commencement of legal actions. ." (¶ 77) (Emphasis added). This does not transfer title of the debt from SPV to CPS, and thus CPS had no legal capacity to file suit in its own name.[12]

---

12 For Rodriguez, the Affidavit of Claim states merely that "the servicing and collection rights for [Defendant's] account were assigned by Cavalry SPV I, LLC to Cavalry Portfolio Services, LLC." (¶ 45). A document entitled Assignment, "effective as of December 28, 2007," stated SPV I assigns to CPS "all of Assignor's [SPV I's] rights to pursue collection or judicial enforcement of obligations under each of the Assignor's accounts..., including engagement of attorneys and commencement of legal actions reasonably required to enforce said legal actions..." (¶ 46). In contrast, the Bill of Sale and Assignment of Accounts says that the underlying creditor, DaimlerChrysler, "hereby absolutely sells, transfers, assigns, sets-over and conveys to Cavalry SPV I, LLC... (a) *all of Seller's* [DaimlerChrysler] *right, title and interest* in and to each of the Accounts." (¶ 47).

        The assignment documents for Kearney are typical of the type of assignment documents that demonstrate, on their face, that CPS never had standing to file suit. (¶ 62,63) [DE 45-1 pp. 52-56]. The "Affidavit of Claim with Bill of Sale, Assignment, and redacted list of accounts transferred, evidencing the chain of *ownership* of the subject debt concluding with" CPS. (Emphasis added). There is a putative Bill of Assignment of March 20, 2009 from Chase Bank USA, NA ("Seller") to Riverwalk Holdings, Ltd ("Buyer"). The Bill of Assignment states Chase "hereby assigns... *all rights, title and interest* of Seller [Chase] in and those certain receivables, judgments or evidence of debts . . . " (emphasis added). (¶ 64) Similarly, a separate Bill of Sale from Riverwalk to SPV I dated October 29, 2009, hereby "assigns . . . *all rights, title and interest* of Seller [Riverwalk] in and those certain receivables, judgments or evidence of debts . . ." (¶ 64). No problem so far; "all, rights, title and interest" have been assigned from Chase to Riverwalk to SPV I. However, the "Affidavit of Claim" demonstrates the shortcoming of the assignment from SPV I to CPS. Item # 5 of the Affidavit states, "The Account *was purchased by Cavalry SPV I*, LLC on 10/30/2009 and *the servicing and collection rights for the account were assigned* by Cavalry, SPV I, LLC to Cavalry Portfolio Services, Inc." (Emphasis added.) (¶ 66). Therefore, the CPS Affidavit itself does not state that title of the debt was assigned, but only the "servicing and collection rights." (¶ 66).

12.    If an instrument granting an attorney the power to commence or prosecute any suit or action for the recovery of debts is held to be an incomplete assignment, then granting servicing and collection rights are also a grant of something less than full assignment.[13] The purported Assignment document for Rodriguez merely assigns "Assignor's rights to pursue collection and judicial enforcement of obligations under each of Assignor's accounts." (¶ 51). This does not suffice to show anything more than a similar assignment to that given in Spencer, which was held to be an incomplete assignment.

13.    An assignee can collect by make phone calls or sending collection letters, or even by arranging for the engagement of attorneys to seeking judicial enforcement by filing collection lawsuits (in the name of the assignor), but it does not follow that the assignee may file suit in its own name absent the assignment also includes title to the account.

### (3) Renne does not control on this issue of CPS having title in this case, and even Cavalry does not contend it does.

For Bird, the Affidavit of Claim, Bill of Sale and Assignment that CPS (attached to their Motion for Summary Judgment) demonstrated that CPS had no standing to file or to continue its collection suit as to Ms. Bird for the same reasons CPS could not as to Ms. Rodriguez or Ms. Kearney. (¶ 76) The Bill of Sale states that HSBC ("Seller") "does hereby sell, assign and convey to Purchaser [SPV I], its successors and assigns, *all right, title and interest* of Seller in and to" certain accounts. (Emphasis added.) (¶ 76). In contrast, the Assignment between SPV I ("Assignor") and CPS ("Assignee") is more limited. SPV I does not assign "all right, title and interest" to CPS. (¶ 76). Instead, "[Assignor SPV I ]... transfers and assigns [to Assignee CPS]... all of Assignor's *rights to pursue collection or enforcement of judicial enforcement of obligations* for each of the Assignor's accounts... *including engagement of attorneys and commencement of legal actions*. . . ." (Emphasis added). (¶ 77).

For Goldstein II, an August 8, 2011 Affidavit of Claim signed by a CPS employee states CPS "performs recovery services for its affiliate" SPV I. The employee states that account was "purchased" by SPV I on 4/23/2010 and "the servicing and collection rights for the account were assigned" to CPS. (¶ 107) The Bill of Sale and Assignment of Loans dated April 23, 2010 states FIA Card Services, NC ("Assignor") "absolutely sells, transfers, assigns, sets-over, quickclaims and conveys to... [SPV I, "Assignee"] . . . *all of Assignors right, title and interest* in and to each of the loans identified in the loan schedule... together with the right to all principal, interest or other proceeds of any kind with respect to the Loans remaining due and owing . . ." (Emphasis added.) (¶ 108). In contrast, the Assignment between SPV I ("Assignor") and CPS ("Assignee") is more limited. SPV I does not assign "all right, title and interest" to CPS. Instead, "[Assignor SPV I ]... transfers and assigns [to Assignee CPS]... all of Assignor's *rights to pursue collection or enforcement of judicial enforcement of obligations* under each of the Assignor's accounts... *including engagement of attorneys and commencement of legal actions*. . ." (¶ 109).

13 *See Spencer*, at 481-82; *Advanced Magnetics*, at 17-18 (instrument granting assignee power to commence actions related to a securities offering is not a valid assignment).

7

14.     A different result is not compelled by the unpublished decision in <u>Cavalry Portfolio Servs.,</u>

<u>LLC v. Renne</u>, 2010 NY Slip Op 50615U, 1 (N.Y. App. Term 2010). In <u>Renne</u> the court was clear

that the assignment from the putative original creditor (there Mitsubishi Motors) to SPV I made

clear that title to the accounts were assigned. <u>Renne</u> at * 2 (the "account was sold from Mitsubishi to

Cavalry SPV I.")  The Court, however, was vague as to what rights were transferred in the

assignment from SPV I to CPS. The decision simply states that the account was "assigned" from

SPV to CPS, but does not quote the assignment document or otherwise disclose the what rights

were assigned. In the case at bar, Plaintiffs do not argue that *no* assignment would allow the

assignee to sue in its own name. Rather, Plaintiffs argue that the assignment must, at a minimum,

transfer title in the account to allow an assignee to sue in its own name. <u>Renne</u> does not state one

way or another *what* assignment rights were transferred between SPV and CPS regarding the

Mitsubishi Motor accounts, and therefore is of no help to Defendants in the instant case. The key

issue is not whether there was "an" assignment, but rather if the assignment transfers *title* to the

debt. [14]

> **D.     By bringing and litigating a collection lawsuit in the name of
> CPS Defendants violated the FDCPA, 15 U.S.C. 1692e,
> 1692e(2)(A) & (B), 1692e(10), 1692f, 1692f(1), especially given
> Defendants' affirmatively false representations.**

15.     CPS could not legally file or prosecute a collection lawsuit since it did not have title.

This is analogous to filing a time barred collection lawsuit, which courts have long held violates

the FDCPA, and violates the same provisions of the FDCPA for the same reasons.

---

14 <u>Renne</u> is also of questionable reliability given that its other holding is clearly contrary to black letter FDCPA law.
Renne held that CPS was not a debt collector under the FDCPA because FDCPA was a "creditor." It has long been
black letter law that a debt collector includes an assignee that regularly collects debts that are already in default at
the time of assignment, or whose principal purpose is to collect such debts. <u>See, e.g.</u> <u>Wadlington v. Credit</u>
<u>Acceptance Corp.</u>, 76 F.3d 103, 106 (6th Cir.1996); <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985);
<u>Cirkot v. Diversified Fin. Sys., Inc.</u>, 839 F.Supp. 941, 944 (D. Conn.1993); <u>Kimber v. Fed. Fin. Corp.</u>, 668 F.Supp.
1480, 1483–86 (M.D. Ala. 1987).

8

16.     Threatening to file, filing, or litigating a collection lawsuit on a time barred debt when the collector knew of no tolling of the statute of limitations is an unconscionable and a deceptive misrepresentation of the legal status of the debt in violation of the FDCPA, implying the collector would prevail, violating   1692e(2)(A) & (10). Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480, 1487-90 (M.D. Ala. 1987). It also "constituted an unfair and unconscionable practice offensive to § 1692f." Id. The Kimber reasoning has been widely adopted as to these points.[15]

17.     Courts apply an objective test based on the understanding of the "least sophisticated consumer" in determining whether a collection letter is "false, deceptive or misleading" under 15 U.S.C. § 1692e in its subsections. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

18.     Cavalry argues that standing is an affirmative defense that may be waived. The decision Cavalry cites for the waiver proposition itself acknowledges the caselaw is not settled on the issue.[16]  However, the argument that standing can be waived strongly argues why the case at bar

---

15 See e.g. Baptist v. Global Holding & Inv. Co., L.L.C.,, 2007 WL 1989450 (E.D.N.Y. 2007) ("To allow a debt collector to threaten a consumer with legal action, even though the statute of limitations would provide the consumer with the ultimate defense, would be to encourage manipulation and misuse of the legal system."); Martinez v. Albuquerque Collection Services, 867 F. Supp. 1495, 1506 (D.N.M.1994) ("A collection agency's attempts to collect on time-barred accounts violate the FDCPA."); Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 393 (D.Del.1991)("[T]he threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate."); Cf. Freyermuth v. Credit Bureau Services, Inc., 248 F.3d 767, (8th Cir. 2001) (effort to collect time-barred checks did not violate the FDCPA when it was not accompanied by a threat of suit.)

16 Cavalry cites *Wells Fargo Bank Minn. v. Mastropaolo* for the proposition that "a lack of standing is not such a fundamental defect that it cannot be waived." 42 A.D.3d 239, 242 (2d Dept 2007). However, *the case itself* recognizes that "[t]he issue has remained unsettled . . . because other decisions have concluded that a lack of standing is tantamount to a lack of subject matter jurisdiction, and therefore is not waivable (*see Stark v Goldberg*, 297 AD2d 203, 204 [2002]; *Axelrod v New York State Teachers' Retirement Sys.*, 154 AD2d 827, 828 [1989]; *Matter of Eaton Assoc. v Egan*, 142 AD2d 330, 334-335 [1988])." Further, other courts have distinguished Wells Fargo and held standing cannot be waived. *Deutsche Bank Nat. Trust Co. v. McRae*, 894 N.Y.S.2d 720

9

is analogous filing a time barred collection lawsuit, which violates the FDCPA. Statute of limitations is an affirmative defense that a consumer must assert or waive. The debt collector in Kimber also argued that filing a time barred collection lawsuit should not be an FDCPA violation "because a statute of limitations is an affirmative defense which is waived if not raised." Kimber at 1488. However it is abusive, unfair, and unconscionable to file suit without standing in hopes of a consumer waiving a standing affirmative defense – particularly given the affirmatively false statements Cavalry and its law firms made in the summons and complaint that CPS in fact owned the putative debt.[17]

19. The FDCPA prohibition of threatening to take an action prohibited by law of course extends to the actual taking of an act prohibited by law.[18] However assuming *arguendo* that § 1692e(5) prohibited only the "threat" to take an act prohibited by law, but not the taking of that act, Defendants are still liable.[19] A threat to enter judgment and a threat to obtain "costs of this

---

(N.Y.Sup. Jan 25, 2010) and *Citigroup Global Markets Realty Corp. v. Randolph Bowling*, 906 N.Y.S.2d 778 (N.Y.Sup. 2009).

17 In addition to the subsections citied by Kimber, filing and litigating a collection lawsuit the debt collector had no standing to initiate at the outset also violations a number of other provisions of the FDCPA by misrepresenting the character, amount, or legal status of the alleged debt, 15 U.S.C. § 1692e(2), threatening to take any action that cannot legally be taken, 15 U.S.C. § 1692e(5), and attempting to collect any amount not authorized by the agreement creating the debt or permitted by law, 15 U.S.C. § 1692f(1).

18 Poirier v. Alco Collections, Inc., 107 F.3d 347, 350-51 (5th Cir. 1997); Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1452 (D. Nev. 1994); Sprinkle v. SB&C LTD, 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so. . . . The opposite conclusion would be akin to attaching liability to one who merely threatens a tortuous act while absolving one who unabashedly completes is. It is safe to say that such an interpretation veers sharply from the legislative purpose behind the FDCPA."); Marchant v. U.S. Collections West, Inc., 12 F. Supp. 2d 1001, 1006 (D.Ariz.1998) ("defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority . . . would defy the very purposes of the section.").

19 The debt collection pleadings Defendants filed in the collection lawsuit "threatened" to take certain acts, none of which could legally be taken as having title to the debt is a condition precedent to being to be able to collect debts via litigation. See pleadings on collections lawsuit, e.g. summons ("your failure to answer, judgment will be taken against you . . . together with the costs of this action") [DE 45-1 p. 2, 41, 119, 147], complaint (CPS threatened "Judgment against Defendant(s) for [a sum certain], with costs and disbursements of this action, and interest therein.") [DE 45-1 p. 5, 43, 121, 149], affidavit of facts in support of entry of default judgment ("your deponent

10

action" are threats to take an act prohibited by law in violation of § 1692e(5) as CPS could not legally get such relief without title to the putative debt. Similarly seeking the "cost of collection" without the legal capacity to file suit violates § 1692f(1) ("the collection of any amount . . . unless expressly. . . permitted by law); and § 1692e(2)(B) (the "false representation of . . . any . . . compensation which may be lawfully received by any debt collector for the collection of a debt).

20.     First, the verified complaints expressly represent that "Plaintiff [CPS], through assignment, is the lawful *owner* of a consumer credit contract executed by the Defendant(s)." (Emphasis added) (¶ 29).        Second, this express misrepresentation amplifies other misrepresentations in the complaint. Defendants misleadingly styled the summons and complaint, as well as the other pleadings, as "CPS as assignee of SPV as assignee for [name of putative original creditor]." [DE 45-1 p. 2-5, 41-44, 119-121, 147-150]. The complaint falsely states that CPS' primary business activity is "the *purchase* of consumer receivables." (Emphasis added.) The purpose and the result of these express misrepresentations to consumers and to the court is to conceal from both that CPS has no legal capacity to even bring the collection lawsuit. Therefore, even if the statute of limitations for an FDCPA action accrued on the date of the filing of the false complaint, the FDCPA claims would be *tolled* because of Defendants active concealment in the summons and complaint that they had no capacity to file suit. It is only *well after* the filing of the summons and complaint that Cavalry and its law firms disclose to the court or to consumers, even in the most oblique and convoluted manner, that CPS in fact did not have standing, its express misrepresentations in the summons and complaint notwithstanding.

---

demands Judgment against the Defendant(s) in the amount of [a sum certain] with interest from [a date certain], together with costs and disbursements...") [DE 45-1 p. 12, 124].

### (1) Klein is not relevant because New York substantive law on assignment controls.

21.     SP argues, "Even if Cavalry SPV should have been named as the plaintiff in the underlying collection lawsuits, this type of technical defect is not a violation of the FDCPA." SP MTD p. 14. In support, SP cites to an unpublished Connecticut decision, Klein v. Solomon & Solomon, P.C., 2011 WL 5354250 * 2 (D. Conn. 2011), appeal dismissed for failure to file briefs (Feb. 17, 2012).[20] In Klein, Solomon and Solomon, a debt collection law firm, filed suit on behalf of a CitiMortgage seeking to collect a debt. Id. at * 1. In the original complaint Solomon alleged that CitiMortgage has "extended credit" to the consumer and that it was a National Banking Association. Id. Solomon then amended the complaint to delete the allegations that CitiMortgage was a "National Banking Association," to state that the original contract with was with Mortgage It, Inc., and to state that the note was assigned to CitMortgage, Id., who was the servicer. 2010 WL 6574708 ¶ 42.

22.     Giving these facts, Klein held, "In this instance, the allegations of the complaint describe procedural defects in connection with state court litigation. In this instance, the allegations of the complaint describe procedural defects in connection with state court litigation. However, the complaint does not contain any allegations of false representations that could be construed as material so as to mislead plaintiff in his repayment of or challenge to the debt." Klein at * 2.

23.     Klein is irrelevant to the instant case because it based on an interpretation of Connecticut state law. Under Connecticut state law, a mortgage servicer can sue in its own name. Fin. California, Inc. v. Lawyers Title Ins. Corp., 2010 WL 4876014 at * 7 (D. Conn. Nov. 22, 2010) ("Under . . . Connecticut . . . law, servicing agents have the capacity to institute lawsuits on

---

20 No court has ever cited Klien, much less adopted it.

behalf of their principals . . . Thus, as BizNiz's servicing agent on the Loan Transaction, FCI would be a real party in interest . . . and have standing to bring this action."). Therefore, under Connecticut state law, CitiMortgage, the mortgage servicer, could just have easily brought the foreclosure action against Mr. Klien as could the holder of the note. Under Connecticut state law, therefore, bringing suit under the name of the mortgage servicer would indeed not affect a consumer's "decision or ability to challenge the debt."[21]

24.    New York state law on the assignment of debts is different than Connecticut state law on assignment of mortgages. As previously discussed, New York state assignment law is clear: An assignee may not file suit in its own name unless it is assigned title to the debt. The FDCPA violation in the case at bar case turns on substantive state law: If Defendants did not violate New York substantive law on assignment, then it did not violate the FDCPA because it did not, for example, take an act "prohibited by law," (§ 1692e(5)), or misrepresent the "character" or "legal status" of a debt (§ 1692e(2)(A)), or, by demanding judgment and costs of court, misrepresent the "compensation which may be lawfully received" (§ 1692e(2)(B), or seek to collect a "fee, charge, or expense" permitted by law (§ 1692f(1)).

25.    For example, the statute of limitations for a credit card debt is 6 years in New York, but only 3 years in Delaware. Therefore, the collection of a 5 year old credit card debt (the claim for which accrued in New York) would not violate the FDCPA while the collection of the same debt

---

21 SP also argues "the plaintiffs were not *harmed* . . . because the identification of Calvary Portfolio as the assignee ... was not a materially deceptive representation or statement..." SP MTD p. 14. Whether Plaintiffs were "harmed" goes to damages, not whether the representation was false, deceptive, or misleading. See Wallace at 324 ("Should the Ohio courts decide that a potential mortgagee may anticipate transfer of the note and mortgage and bring valid foreclosure proceedings in advance [in its own name], the district court will have to decide the impact of such a holding on Wallace's claim for *damages* under the Fair Debt Collection Practices Act. We do not agree, however, with the district courts of this Circuit that have treated the debate in Ohio over standing to bring a foreclosure action as dispositive of *whether a statement was materially misleading* under the Act.") (emphasis added). Wallace at 328 fn. 2.

13

would violate the FDCPA if cause of action accrued under Delaware state law. See, e.g., Portfolio Recovery Assoc., LLC v King, 927 N.E.2d 1059, 1061-62 (NY 2010).

### (2) Bringing collection actions without complying with state law regarding assignment constitutes the unauthorized practice of law, violating the FDCPA.

26.     CPS was engaging in the unauthorized practice of law by filing suit and litigating in its own name without title. Courts have held that a debt collector violates the FDCPA when it brings suit in its without having a proper assignment under state law.22 The facts in the case at bar are a particularly egregious form of unauthorized practice of law as "CPS gives specific direction to the Law Firms, and exercises control and has a right of control of the Law Firm's specific manner, method, and form of debt collection litigation." (¶23). CPS acts as the intermediary

---

22 See, e.g. Poirier v. Alco Collections, Inc., 107 F.3d 347 (5th Cir. 1997) (holding that collections agency violated § 1692e(5) when it engaged in the unauthorized practice of law by instituting a lawsuit against a debtor since the debt had not been properly assigned); Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 804-06 (S.D. Ohio 2006) ("Because it never obtained ownership of the debts through an assignment from the original creditors that complied with [state law], D.B.S. Collection Agency was not authorized to litigate under its own name. Any debt collection action filed by "D.B.S. Collection Agency" against a class member during the class period constitutes unauthorized practice of law, and as such, a violation of 15 U.S.C. § 1692e(5). In the present case, Defendants standard debt collection complaint seeks payment of court costs, filing fees, and interest in connection with the lawsuit. Because Defendants never had the legal capacity or the authority to commence or maintain a debt collection action against the class member... Defendants violated 15 U.S.C. § 1692f when they demanded payment for costs, fees, and interest;."; and Martinez v. Albuquerque Collection Services, Inc., 867 F.Supp. 1495, 1503 (D.N.M.1994) ("a collection agency that brings lawsuits against debtors pursuant to claims the underlying creditor has nominally assigned to it engages in the unauthorized practice of law on behalf of the creditor. . . . section 1692e(5) of the FDCPA prohibits a collection agency from filing suit in New Mexico courts on nominally assigned claims . . . Defendant operates a collection agency that litigates debtor accounts in exchange for a commission creditors pay. The fact that a licensed attorney represents ACS does not immunize ACS from the... prohibition."). [As to what constitutes "nominally assigned,' Martinez refers to, e.g. Kolker v. Duke City Collection Agency, 750 F. Supp. 468, 470 (D.N.M. 1990) ("Accounts are not purchased by the collection agency. Rather, Lovelace assigns accounts to defendants on a contingency basis so that defendants can commence litigation when other legal means of collection have not been effective.")] See also New York County Lawyer's Assoc. Ethics Opinion No. 510 (1963) ("In our opinion it would be improper for an attorney to be engaged by a commercial collection agency to institute suit against debtors of the customers of the agency. This would necessarily involve the direction of the performance of its duties by or in the interests of an intermediary. As such it would clearly violate Canon 35[22] .... The contemplated practice as outlined in the question would also violate Canon 27 which declares it for an attorney 'to procure business by indirection through touters of any kind.' We express no opinion with respect to the application of Sections 270 and 280 of the Penal Law of the State of New York to the contemplated activities of the collection agency. These sections prohibit activities of collection agencies which amount to the practice of law."); New York County Lawyer's Assoc. Ethics Opinion No. 555 (1967) ("It should be expressly noted that the collection agency may not fix the attorney's fees except with the client's approval, for it would then be in a position... to exploit the attorney's services for its own profit.").

14

between the nominal client (SPV) and the debt collection law firms that CPS retains and directs. CPS has a direct, integral role in the debt collection litigation by providing false verifications to complaints, by filing false and misleading affidavits of facts in support of default judgment, and by litigating through its own *internal* network of 55 law firms with whom they negotiate contingent fee agreements. (¶ 17–22). By retaining and negotiating the contingency fee agreements CPS clearly violates NY Ethics Decision No. 555.

> ### E. Regardless of the issue of standing, Defendants violated the FDCPA by misidentifying the putative creditor as CPS instead of as SPV.

27.     Regardless of the issue of standing, Defendants violated the FDCPA by misidentifying the putative creditor as CPS instead of SPV. These claims are also subject to tolling as Cavalry and its law firms affirmatively and expressly misrepresented in the summons and complaint that CPS was the owner of the putative debt.

28.     In Wallace, a debt collection law firm filed a foreclosure lawsuit identifying Washington Mutual as the holder of the mortgage. Wallace v. Washington Mut. Bank, F.A., 683 F.3d 323, 326-28 (6th Cir. June 26, 2012). This representation in the complaint was false. "Sampson does not dispute that the foreclosure complaint identifies Washington Mutual as the actual holder of plaintiff's mortgage, but claims that Ohio law permits Washington Mutual to anticipate that it would become the title holder after the foreclosure action was initiated but before it becomes final." The Defendants noted that the question of whether Washington Mutual had standing to bring the foreclosure action under these facts was an issue of state law pending before the Ohio Supreme Court. The Sixth Circuit held that even if Washington Mutual had standing to bring suit under Ohio state law, the debt collector still violated the FDCPA because the state court

15

complaint identified Washington Mutual as actual holder of the mortgage when that was not true. Specifically, the court held that the misidentification violated 15 U.S.C. § 1692e because it was "materially" false or misleading. "The materiality standard [for § 1692e] simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." Id. at 326-27.

29.     In Suquilanda v. Cohen & Slamowitz, LLP, 2011 WL 4344044 (S.D.N.Y. 2011), a case Defendants cite for a different proposition, MRC Receivables Corporations "held title" to putative debts while Midland Credit Management was the servicer for the debt. Id. at * 1. The Court held that a collection letter violated § 1692e by identifying Midland Credit as the creditor when in fact MRC held title to the debt because the least sophisticated consumer could be could be confused as to the identity of the putative creditor. Id. at * 7.

30.     SP violated the FDCPA in a separate but similar manner. SP did not effectively communicate the identity of the current creditor in its initial communication with Ms. Goldstein, its letter of October 11, 2011. (¶ 91) [45-1 p. 129]. SP names the purported original creditor "Bank of America/ FIA Card Services, N.A." SP lists the style of the collections lawsuit, "CAVALRY PORTFOLIO SERVICES, LLC, AS ASSIGNEE OF CAVALRY SPV I, LLC, AS ASSIGNEE OF FIA Card Services, N.A. vs. LAURIE GOLDSTEIN." But nowhere does SP convey – effectively[23] or otherwise – that SPV is the current creditor. Therefore SP violated 15 U.S.C. § 1692g(a)(2) (the failure to disclose in the initial communication or within 5 days thereafter "the name of the creditor to whom the debt is owed"). Listing the name of a servicer instead of the owner of the putative debt violates § 1692g(a)(2). Bourff v. Rubin Lublin, LLC,

---

23  It is not enough that the disclosures required by § 1692g are conveyed; those disclosures must be conveyed "clearly" and "effectively." Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)

674 F.3d 1238, 1242 (11th Cir. 2012) ("The identity of the 'creditor' in these [§ 1692g(a)(2)] notices is a serious matter.") Indeed, the style of the case SP listed in the letter – CPS as assignee of SPV – affirmatively suggests that CPS is the current creditor.

### (1) Defendants cannot "cure" their FDCPA violations.

31.     Defendants suggest they could simply file a "motion to amend" and "cure" the FDCPA violation of filing suit in the name of an entity that had no standing to sue at the outset. First, no Defendant has sought to do so. Second, when Defendants violated the FDCPA by filing and continuing suit in the name of CPS, they cannot "unring the bell." An FDCPA violation cannot be undone by a subsequent action. See, e.g., Eads v. Wolpoff & Abramson, LLP, 538 F. Supp. 2d 981, 986 (W.D. Tex. 2008) (debt collector liable under the FDCPA for filing an original collections lawsuit seeking a fee not authorized be below irrespective of the fact that the debt collector later amended the collections lawsuit to drop the fee demand); citing to Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262 (D.Conn.2005) (holding that the defendants violated the FDCPA by overstating the amount of debt due though they later clarified their misrepresentation). Third, in a similar case when a servicer sued when the debt was owned by a different entity, the Court held that dismissal with prejudice was required. Resurgent Capital Servs., LLC v. Mackey, 32 Misc. 3d 265, 266-67 (N.Y. Dist. Ct. May 2, 2011).

### D. PLAINTIFFS' FDCPA CLAIMS ARE NOT TIME-BARRED

32.     No Defendant has claimed a statute of limitation defense as to Plaintiffs' GBL § 349 or Judiciary Law § 487 claims which has a three year statute of limitations. The collection lawsuits as to all Named Plaintiffs were filed within three years of the filing of this class action. Cavalry

17

challenges only Kearney and Bird as to limitations; Choi and SP also challenge Rodriguez and Goldstein I (index # 3087-11) and II (index # 11101-11). As to Goldstein II there can be no doubt that the statute of limitations for FDCPA claims has not expired as the collection lawsuit was filed May 13, 2011, less than one year from the date of the filing of this federal lawsuit, February 22, 2012.

> **(1) Whether the accrual of the violation is upon the filing of the suit or the service of the suit is irrelevant to the case at bar because Defendants' sewer service and affirmative misrepresentations in the complaint and tolled the statute of limitations.**

33.     The text of the FDCPA states, "An action to enforce [the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Defendants assert that the FDCPA violation accrues when the illegal lawsuit was filed, not when it was received by the consumer because the filing was the last opportunity to comply with the FDCPA. There is a split of authority on this issue. See., e.g. Johnson v. Riddle, 305 F.3d 1107, 1113-14 (10th Cir. 2002) ("We reject [the debt collector's] argument that the violation occurred upon filing rather than upon service... [I]f the limitations clock began to run with service of process rather than with filing suit, [the debt collector] could effectively block any action under the federal statute by filing suit and then delaying service. In fact, a delay of service for an entire year (so that the debtor remained unaware of the lawsuit during that time) could cause the limitations period to run out before there was any opportunity for the debtor to bring suit under the FDCPA.").

34.     In any case, the argument is irrelevant because regardless of whether the FDCPA accrued on the date of filing or service, the claims of Named Plaintiffs are tolled because of sewer service and because of the affirmative misrepresentations in the complaint that concealed the FDCPA violation

### (a) Sewer service tolls the claims of Rodriguez and Goldstein I.

35.     Both Rodriguez and Goldstein I are victims of sewer service. The affidavits of service were false. (Rodriguez ¶ 31, 32, 36; Goldstein I ¶ 87, 88, 93-96).  Neither knew nor could have reasonably known about the debt collection lawsuits until within one year of the filing of this FDCPA action, February 22, 2011. Rodriguez first learned of the lawsuit when she denied housing on July 15, 2011 and learned a judgment appeared in her credit report. (¶37).  Goldstein I first learned of the lawsuit after an income execution was issued to her employer on July 22, 2011.

36.     In a recent FDCPA class action Judge Denny Chin (now on the Second Circuit) held that equitable tolling applies to FDCPA claims when the consumer did not know nor could reasonably have known that suit had been filed against them because of sewer service. "Because sewer service purposefully ensures that a party is never served, it is plausible that defendants' acts were "of such character as to conceal [themselves]" to warrant equitable tolling. Sykes v. Mel Harris & Assoc., LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (citing to Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349–50, 22 L.Ed. 636 (1874).  Other New York Courts have come to the same conclusion. Somin v. Total Cmty. Mgmt. Corp., 494 F.Supp.2d 153, 158 (E.D.N.Y.2007) (J. Wexler) ("the FDCPA is subject to equitable tolling in appropriate circumstances."); Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011) (same). Therefore sewer service tolls the FDCPA claims of Rodriguez and Goldstein I as to filing a collection lawsuit without standing to do so.

### (b) Even absent sewer service, for Rodríguez and Goldstein I Defendants' affirmative misrepresentations in their complaint concealed the FDCPA violation, tolling those FDCPA claims until, at the earliest, additional facts were disclosed.

37.     The FDCPA claims of Bird, and Goldstein I are tolled by the affirmative misrepresentations

in the complaints that concealed from consumers and from the courts that CPS did not have standing to file suit. These claims are tolled until, at the earliest, the date Defendants disclosed facts, even obliquely, that gave any indication that their statements in the summons and complaint were false. This brings to within one year of the filing of this federal lawsuit the FDCPA claims of Rodriguez, Bird, and Goldstein I based on CPS filing suit without the legal capacity to do so, even absent tolling for sewer service.

38.     As previously noted, all of the verified complaints contained the false sworn statement that "Plaintiff [CPS], through assignment, is the lawful *owner* of a consumer credit contract executed by the Defendant(s)" (emphasis added).[24] Nothing in the summons or complaint gives any indication that this statement is false. Thus, any FDCPA claim predicated on CPS not actually being the "owner" of the debt (and thus having no standing to bring suit) is tolled until the falsity of that claim could be known by consumers or by the civil courts.

39.     It is only *well after* the filing of the summons and complaint that Cavalry and its law firms disclose to the court or to consumers, even in the most oblique and convoluted manner, that CPS in fact did not have standing, its express misrepresentations in the summons and complaint notwithstanding. For Rodriguez this date is February 25, 2011, the date that Choi filed the filed affidavit of facts in support of application for default executed by CPS.(¶ 33). For Goldstein I this date is March 14, 2011, the date Choi made an application for entry of default judgment, and used in support misleading statement of facts executed by CPS.

_____

24 This express misrepresentation amplifies other misrepresentations in the complaint. Defendants misleadingly styled the summons and complaint, as well as the other pleadings, as "CPS as assignee of SPV as assignee for [name of putative original creditor]." (DE 45-1 p. 2-5, 41-44, 119-121, 147-150). The complaint falsely states that CPS' primary business activity is "the *purchase* of consumer receivables" (emphasis added). The purpose and the result of these express misrepresentations to consumers and to the court is to conceal from both that CPS has no legal capacity to even bring the collection lawsuit.

20

> **(i)     For Bird and Kearney, separate attempts to obtain judgment without
> legal capacity to do so should be separate violations of the FDCPA.**

40.     On November 1, 2010 Choi, on behalf of CPS, served Bird discovery answers [DE 45-1

pp. 73-83] that included the purported sales and assignment agreements from the putative

original creditor to SPV, and from SPV to CPS. Assuming, *arguendo,* that more than one year

from the date of the filing of this federal suit Defendants disclosed to Bird and Kearney would

still have separate FDCPA claims for the separate, distinct acts Defendants later took in

connection with the collection of the putative debts.[25]

41.     If Defendants take separate discrete acts, each of which is a step towards obtaining the

wrongfully obtaining a judgment, each of those steps should be separate FDCPA violations. As

Defendants have no standing to bring suit, each motion bringing them closer to obtaining a

judgment and obtaining costs of court should be a separate discrete act. Defendants seek to

obtain a benefit in taking each step (i.e. a judgment). Each step imposes additional harm to

consumers in terms of having to attend court hearings, respond to motions, or risk having

judgment entered against them by a debt collector who has no standing. The separate violations

are the filing of the illegal lawsuit; the filing and use of misleading affidavits of merit in seeking and

obtaining default judgments; the filing applications for default judgment; the filing, service, and use

the use of false affidavits of merit in support of motions for summary judgment or opposition to

order to show cause to vacate default judgments; and the use of false affidavits of service to oppose

an order to show cause.

42.     The Second Circuit has not ruled on the issue. However Judge Denny Chin, who now sits on

---

25 Given the convoluted nature of the sales and assignment agreements, coupled with the express, sworn
misrepresentations in the complaints, it is arguable Plaintiffs' claims should still be tolled even after the production
of the sales and assignment agreements. State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir.1988)
(tolling appropriate when continuing ignorance of claim was not attributable to lack of diligence on his part)

the Second Circuit, has recently held that separate pleadings constituting the same violations in a collections lawsuit constituted a separate basis for determining statute of limitation for an FDCPA claim. In Sykes v. Mel Harris & Assoc., LLC, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), consumers filed a class action lawsuit against a debt buyer, its debt collection law firm, and the process servicers they used contending that they engaged in systematic sewer service, filed false affidavits of service and false affidavits of merit with the court, and used those false affidavits to obtain default judgments. Each step was a separate violation for FDCPA statute of limitations purposes.

> The first FDCPA violations allegedly occurred when the Leucadia [the debt buyer] and Mel Harris defendants [the law firm] filed the state debt collection actions. Defendants plausibly violated the FDCPA *again* when they subsequently applied for default judgments against plaintiffs.
>
> Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 421 (S.D.N.Y. 2010) (Emphasis added).

43.     Judge Chin then used the "default application dates" to determine the date of the accrual of the FDCPA cause of action for applying for default judgment based on the use of the false affidavits. Id. (The court then found the claims were still time-barred absent tolling, which the court found for two of the named plaintiffs.) See also Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 801 (S.D. Ohio 2006) ("Defendants violated § 1692e when they commenced and maintained debt collection lawsuits in state court against the class members, even though they did not have the legal capacity to do so."); Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568, 572 (S.D.N.Y. 2011) (Continued use of false affidavits of service violates the FDCPA. Plaintiffs "have also plausibly alleged that by failing to investigate the fraudulent practices of its process service company and continuing to enforce those judgments, defendants violated the

22

FDCPA and concealed that violation in the process.")

44.     Defendants do not dispute that separate collection letters, each making the *exact same* misrepresentation, would allow separate statutes of limitations for each letter. Choi MTD p. 11 fn. 2 ("This is distinguished, for example, by instances where the defendants sent a series of threatening letters which each independently violate the FDCPA, but where only some of them are time-barred.")

45.     Plaintiffs are ***not arguing*** for a doctrine of continuing violations. A continuing violation doctrine would be if Defendants filed suit without standing, but then took no actions whatsoever. Under that theory, the only liability would be for Defendants continuing the single violation: the filing of the collection lawsuit. What Plaintiffs ***are*** arguing is that where a debt collector engages in motion practice in a debt collection lawsuit, each motion making an affirmative demand for judgment or costs of court (when the debt collector is legally barred from seeking or obtaining either) is in fact a "discrete act" and an "identifiable incident under which plaintiffs' rights were violated." Cavalry MTD p. 5.

46.     Defendants cite to only two cases that address the issue of whether multiple motions in the same debt collection lawsuit can form the basis for separate statute of limitations for an FDCPA claim. The two cases are New York district court decisions[26] the pre-date Judge Chin's holding in Sykes that each pleading in a debt collection lawsuit can form the basis for a separate statute of limitations claims. Calka offers no rationale for its holding. Sierra is mere dicta on the limitations issue as the court found that the conduct in fact did not violate the FDCPA. The concern expressed in Sierra was that the consumers "cause of action could be kept alive

---

26 Calka v. Kucker, Kraus & Bruh, LLP, 1998 WL 437151 (S.D.N.Y. 1998); Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999)

indefinitely because each new communication would start a fresh statute of limitations." Id. The court's frustration with the consumer in that case was somewhat palpable as he twice entered into settlement agreements with the debt collector, each time acknowledging that the amount sought was correct, each time breaching the agreement, and then suing the debt collector for including attorney's fees that the consumer twice agreed were due. Id. The unspoken concern that the consumer was attempting to "game the system" is palpable in the decision.

47.     The facts here are sharply distinguishable. In <u>Calka</u> and <u>Sierra</u>, the claimed FDCPA violation (one of which was found not to be a violation at all) was attempting to collect an inflated amount. There was no dispute that the debt collector was actually entitled to a judgment for the debt sought, just a disagreement about the amount (even in the case where the consumer twice agreed in writing that the amount was correct).

48.     The case at bar involves the systematic filing and litigating of thousands of collection lawsuits where the debt collector never had legal capacity to bring or maintain suit; where Defendants' filed thousands sworn verifications that CPS in fact "owned" the putative debt for the express purpose of concealing from consumers and from the courts that in fact CPS had no legal capacity to bring or maintain suit; and where the detection of the express, sworn false statements in the complaint could only be detected long after the filing of the summons and complaint by a meticulous splicing of the fine print of the sales and assignment contracts by someone with a deep understanding of the intricacies of New York assignment law.

49.     Under this fact pattern, the following acts should constitute separate FDCPA violations for limitations purposes. These are discrete acts taken within one year of the filing of this complaint seeking to obtain judgment in the name of CPS. As to Bird, on April 11, 2011 CPS,

24

through Choi, filed a notice of motion for summary judgment to obtain judgment in the name of
CPS. As to Kearney, on April 14, 2011, SP filed a certificate of readiness to set the case for trial,
and then reset the hearing date. (¶ 68). After being sued in federal court for litigating without
standing, instead of moving to discontinue the action (or even to attempt to amend the caption,
assuming that were possible), SP, through CPS, continued with the trial setting. (¶ 69). Kearney
paid money to CPS, through SP, in the form of a stipulation of settlement. The risk for Kearney,
of course, was that if she did not agree to be strong-armed into a settlement, she might lose the
collection case, and be liable for the full amount. This concern was amplified given the
additional false affidavits executed by CPS on March 17, 2011 (within 1 year of the filing of this
complaint) against swearing that CPS was entitled to judgment against Kearney. [DE 45-1, pp.
96 ¶ 4 (". . . evidencing a chain of ownership of the subject debt ending with plaintiff [CPS]").
Even in the strong armed settlement, CPS, through SP, was entitled to enter judgment against
Kearney in the name of CPS for the full amount of the debt. (¶ 69).

### (ii)    *Plaintiffs also have independent FDCPA claims within one year of the filing of this federal action.*

51.    Bird's FDCPA claims against Choi are certainly not time barred. Choi did not notice an
appearance in the collection lawsuit until October 22, 2011. On April 11, 2011, Choi filed a Notice
of Motion for Summary Judgment demanding judgment and court fees in the name of CPS. While
CPS may argue a "continuing violation" defense, Choi has no such ability. The April 11, 2011 was
*her* first attempt to obtain judgment; there is no prior violation from Choi to be continued: it is
simply a violation. Similarly, SP substituted into Kearney's case, noticed trial, and demanded a
settlement at trial that would include the possibility of judgment. This was the first attempt by SP to
collect the debt from Kearney. Choi and SP also used the false affidavits of service in opposition to

25

an order to show cause.[27]

## F.   DEFENDANTS VIOLATED GBL § 349.

52.   New York's GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." The statute creates a private right of action for any person injured by a violation of the statute. GBL § 349(h). The elements of a GBL § 349 claim are that "1) the act or practice was consumer-oriented; 2) the act or practice was misleading in a material respect; and 3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009); Stutman v. Chemical Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (2000) (citations omitted). Courts employ an objective test to determine whether conduct is "deceptive or misleading in a material way": "whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995). Id. at 26. "NYBGL § 349 'contemplates actionable conduct that does not necessarily rise to the level of fraud.'" Rodriguez v. It's Just Lunch, Intl, 2010 WL 685009 *8 (S.D.N.Y. 2010) (citing Caidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 343, (1999). In addition, plaintiff need not demonstrate reliance on defendant's deceptive actions. Phifer v. Home Savers Cons.Corp., 2007 WL 295605 *5 (E.D.N.Y. 2007).

### (1) Defendants' acts or practices were consumer oriented.

53.   Defendants contend that the FAC does not allege that their GBL § 349 violations were "consumer oriented." This argument is without merit. The complaint could not be clearer as to

---

27 Choi and SP are certainly liable for sewer service by ratification by using thesewer service affadvit given that the process server was SamServe, and given the evidence presented by Rodriguez and Goldstein I that they were not served. See Restatement (2d) of Agency 88, 99.

26

why Defendants' acts were consumer oriented. (¶ 138).[28]

54. Cavalry contends Plaintiffs does not allege that CPS or SPV provided them "a good service or property," and thus Plaintiffs have not alleged Cavalry engaged in "consumer oriented activity." Cavalry MTD p. 8. GBL § 349 is intentionally designed to provide far reaching consumer protections: "the reach of these statutes 'provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State' (NY Dept of Law, Mem to Governor, 1963 NY Legis Ann, at 105)". Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 291 (1999). As such, the statute applies to "virtually all economic activity. *Id* at 290. As the New York Court of Appeals has held, "the critical question, then, is whether the matter affects the public interest in New York." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995). See also Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 52 (2d Cir. 1992) (emphasis added) (Debt collection unequivocally falls within the scope of GBL § 349: "by its own terms, therefore, GBL § 349 applies to the acts or practices of every business operating in New York"); Stutman, 95 N.Y.2d at 28 (misstatements about mortgage prepayment charges, if proved, could state claim under GBL § 349); People v. Nationwide Asset Serv., Inc., 888 N.Y.S.2d 850 (S. Ct. Erie County 2009) ("debt settlement" firm's overwhelming failure to deliver promised results violated GBL § 349); Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 209, (2001) (GBL § 349 "encompasses a far greater range of claims that were never legally cognizable before its enactment");

55. Further, the FAC alleges that SPV was collecting debts directly and indirectly through

---

28 138. Defendants' conduct was consumer-oriented and has a broad impact on consumers at large and was Defendants' pattern, practice and policy. Defendants' conduct impacts the thousands of consumers in the state of New York. This broad impact includes threatening, filing, prosecuting, seeking judgments and court costs, and seeking post-judgment collection remedies for thousands of collection lawsuits in the name of CPS where CPS had no legal standing to file suit, demand judgment, or demand court costs.

CPS, and was thus jointly and severally liable for the debt collection violations of CPS. (¶ 13). The FAC outlines in detail the ways in which CPS was integrally involved in the debt collection litigation, and controlled and directed the litigation. (¶ 14-23).

56.     In any case, GBL § 349 applies to debt collection – not only by debt collection law firms but also against debt collection creditors and debt collectors in joint ventures with them. In Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 428 (S.D.N.Y. 2010), Judge Denny Chin, now on the Second Circuit, held that the FDCPA allegations against a debt collection law firm (Mel Harris), the debt collector creditor Harris filed suit on behalf of (LR Credit), and the parent company of LR Credit who was not directly involved in the debt collection (Leucadia) stated a claim for violations of GBL § 349. The factual allegations that gave rise to claims in Sykes are similar to those in the case at bar: That Defendants "knowingly authorized defendant Fabacher to file false affidavits of merit—misleading both the Civil Court and consumer-defendants—to secure default judgments that enabled them to freeze bank accounts, threaten to garnish wages, or pressure individuals into settlements." Id. at 424.

57.     Similarly, a debt collection law firm and its debt collector creditor client *jointly* violated GBL § 349 when they filed time-barred debt collection lawsuits, and doing so without conducting meaningful review of the facts alleged in the debt collection complaint. Diaz v. Portfolio Recovery Associates, LLC, 2012 WL 661456 * 13,14 (E.D.N.Y. Feb. 28, 2012) (M.J. Pollak) report and recommendation adopted, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (J. Brodie). As previously argued, filing timer-barred collection lawsuits is similarly deceptive as filing collection suits without title to do so as in both cases the consumers have an absolute defense to the suit brought by that specific debt collector creditor. .

58.   SP argues the claims against it do not have a "broad impact on the public at large" because it was the last of the Law Firm Defendants to substitute into the collection lawsuits. As its conduct is only alleged as to Kearney and Goldstein I & II, it cannot be said to have a "broad impact on the public at large." SP MTD p. 17. This argument misses to point. SP was just the most recent of firms to be directly involved in the filing and *litigating* of thousands of fraudulent collection lawsuits. (¶ 21). It is the larger practice that is consumer oriented, even if SP was only the most recent player in the practice. It is, however, substituting in to thousands of lawsuits, so its involvement is not small.

59.   The complaint also alleges the use of sewer service process servers to obtain default judgments against Rodriguez and Goldstein I.  Moreover, Defendants *used* the false affidavits of service in attempting to *retain* the default judgments by attaching them to oppositions to orders to show cause to vacate the default judgments. (Rodriguez, ¶ 32, 36 – 38, 40; Goldstein I ¶ The complaint alleges (¶ 40) that Defendants knew that the process servers who affidavits of service they were using in order to oppose the orders to show cause were being sued in <u>Sykes</u> for engaging in massive sewer service but relied on the affidavits anyway despite evidence evidence that the affidavits were false.[29]  For Rodriguez the process server was Benjamin Lamb of SamServe (¶ 32, 40).[30]  In Goldstein I, Ms. Goldstein provided overwhelming, objectively

---

29 For Rodriguez, the affidavit was from Nenjamin Lamb of SamServe. (¶ 40).

30 In granting class certification, Judge Chin found evidence supporting the factual allegations of widespread sewer service by SamServe, including by Mr. Lamb. <u>Sykes v. Mel Harris & Associates, LLC</u>, 2012 WL 3834802 (S.D.N.Y. Sept. 4, 2012) ("Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases. . . Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. . .  On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. . . . Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. . . . These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.")

verified evidence that the process server made up facts supporting the affidavit of service. Despite knowing these facts Choi opposed the order to show cause for Rodriguez and SP opposed the order to show cause. Using false affidavits of service to obtain sewer service states a claim for violation of GBL § 349. The broad impact to the public at large is especially true in this case where sewer service was by SamServe, who has been found to engage in widespread, systematic sewer service.

### (2) Defendants' conduct was materially misleading.

60. The second element for a claim under GBL § 349 is a materially misleading practice. A deceptive practice need not reach the level of common-law fraud to be actionable under GBL § 349. Stutman, 95 N.Y.2d at 29, 709 N.Y.S.2d at 896.

61. As previously discussed, the collection lawsuits expressly stated that CPS was the "owner" of the putative debt when it was not. This is an express misrepresentation. Any person – a reasonable consumer or even a civil court judge – could only interpret this to mean what it says: that CPS owns the debt. This is not true. Defendants actively concealed the falsity of this statement until long after the filing of the summons and complaint. The only hint that the statement in the complaint was false was when Defendants filed an affidavit of facts in support of an application for default judgment, in response to discovery demands, when CPS was engaging in motion practice.

62. Similarly the express false statement in the affidavit of facts would be misleading to anyone – any consumer, any civil court judge. The affidavits only have one meaning: that the process server served a specific individual when in fact the process server did not, and instead entirely made up the identity of the person (in the case of Rodriguez (¶ 32, 37-40) or flatly lied

30

about serving the consumer (in the case of Goldstein I, who looks nothing like the "Goldstein" alleged to have been served (¶ 93-99)).

63.    The use of false affidavits of service not only obtain default judgments, but also to *retain* the default judgments by using the false affidavits in oppositions to an order to show cause.

64.    The use of false affidavits in a debt collection lawsuit violates GBL § 349. Sykes at 428. As previously indicated, filing suit without title is similar to filing a time barred debt collection lawsuit as the consumer has an absolute defense to the suit brought by that specific putative creditor. As previously indicated, Diaz I held filing a time-barred collection suit, and doing so without meaningful attorney review, was a materially misleading practice. Diaz at * 13.

65.    Similarly the misidentification of CPS as the "owner" of the putative debt, misidentifies the putative creditor, which violates GBL § 349. Midland Funding LLC v. Tagliafferro, 33 Misc. 3d 937, 942, 935 N.Y.S.2d 249 (Sup. Ct. 2011) (debt collector misidentifying itself as 'doing business as' and LLC "may be a 'deceptive' act or practice under General Business Law § 349 in that it is impossible for the defendant to know which entity is the correct plaintiff.") Tagliafferro emphasized that this confusion is magnified because the NYC Department of Consumer Affairs license number applies to one debt collection entity, but not the other. Id. That is also true here. The debt collection license on the complaint in Goldstein II, 1327348 [DE 45-1 p. 148], is that of SPV according to the Department of Consumer Affairs website.[31] The collection suit, however, was brought in the name of CPS. This enhances the confusion that Tagliafferro found was a GBL § 349 violation.

66.    Cavalry argues that its actions were no "deceptive or misleading in a material way" for two reasons. Cavalry p. 9. First, Cavalry argues that the specific named plaintiffs' were not actually

---

31 http://www.nyc.gov/html/dca/html/licenses/license_check.shtml

"deceived" by CPS filing suit without title the named Plaintiffs because launched "vigorous defenses" to the collection lawsuits. The argument is disingenuous. If any of the named Plaintiffs lost the collection case and judgment rendered in favor of CPS, Cavalry would no doubt argue that the named Plaintiffs were precluded by collateral estoppel or res judicata from bringing suit in federal court for a violation premised on CPS not having had standing. Of course, if the collection lawsuit was still pending, Cavalry argues this court should abstain under Colorado River. The argument is also unconvincing because the named Plaintiffs that prevailed in the collection lawsuits did so for reasons other than the fact that CPS did not have title to the putative debt. Lastly, whether Plaintiffs were subjectively deceived or mislead is not relevant as the test is objective. Second, Cavalry argues that standing may be waived. As argued in the section on FDCPA liability under Kimber, this assertion may not be true, and, if it was, makes the act even more deceptive.

### (3) **The Defendants' Actions Caused Harm**

67.    The third element of a claim under GBL § 349 is actual injury. Although "actual" injury must be proven in order to recover under the statute, it need not be "pecuniary harm." Stutman, 95 N.Y.2d at 28-32 (citations omitted). Plaintiff extensively states how the acts of Defendants caused injury on named Plaintiffs and class members. (¶ 10,142-45)

### G.    The Law Firm Defendants violated Judiciary Law § 487[32]

68.    The Defendant-law firms argue that Plaintiffs' Judiciary Law claim, alleging that the Defendants deceived or colluded "with intent to deceive the court or any party," fails because Plaintiffs do not adequately allege facts in support of Defendants' fraudulent or deceitful conduct. Judiciary Law §487 provides that any attorney who has engaged in "any deceit or

---

32 Plaintiffs move to discontinue their claims of violations of Judiciary Law § 487 against CPS and SPV.

collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is guilty of a misdemeanor and liable for damages. N.Y. Jud. Law. § 487.

69.     But Defendant-law firms' conduct was not an isolated instance, but rather was part of a broader pattern and practice of deception, involving the systematic filing of thousands of collection lawsuits in which Defendants lacked standing to prosecute the actions. CITE TO FAC. Such conduct is precisely the sort of pattern of recurring and deceptive conduct that has been held to sufficiently make out a claim under Judiciary Law § 487 in two recent significant cases in this circuit. See Diaz v. Portfolio Recovery Associates, LLC, Case No. 10-CV-3920, 2012 WL 661456 (E.D.N.Y. Feb. 28, 2012) report and recommendation adopted, 2012 WL 1882976 (E.D.N.Y. May 24, 2012); Sykes v. Mel Harris and Associates, LLC, 757 F. Supp. 2d 413 (S.D.N.Y. 2010). In both cases, the court denied the defendant-law firms' motions to dismiss the Judiciary Law claim because, like here, the broad pattern of misconduct alleged goes beyond isolated instances to something systematic and damaging to the legal system itself.

70.     Defendant-law firms' conduct here constitutes a broad pattern of deception for the reasons stated in the FDCPA and GBL sections, e.g., filing and prosecuting thousands of collection lawsuits where CPS had no standing, and where the verified complaint falsely stated that CPS was the "owner" of the account for the purpose of deceiving consumers and courts into entering judgments when the consumer had an absolute defense to the action.

## H.     THE     NOERR-PENNINGTON     DOCTRINE     IS IRRELEVANT

14.     Defendants argue that the instant suit is barred by the Noerr-Pennington doctrine because it interferes with Defendants' First Amendment right to file and prosecute debt collection

33

actions in state court in which the Defendants lack standing. This is simply not the case. Any doubt about the FDCPA's coverage of litigation activity was removed by the Supreme Court in Heintz v. Jenkins, 514 U.S. 291 (1995).[33]

15.     Courts expressly reject the applicability of Noerr-Pennington to FDCPA claims. See, e.g., Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 615-16 (6th Cir. 2009) (First Amendment does not shield lawyers engaged in litigation from FDCPA liability) (citing Sayyed v. Wolpoff & Abramson, 485 F .3d 226, 232 (4th Cir. 2007)) ("'All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the *FDCP A applies to the litigation activities of attorneys who qualify as debt collectors* under the statutory definition.")) (emphasis added). Similarly, courts have rejected application of Noerr-Pennington to state law claims. See, e.g., Calabrese v. CSC Holdings, Inc., 2004 WL 3186787, at *2 (E.D.N.Y. July 19, 2004) ("'[i]t is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute'") (quoting California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 514 (1972)).

### (1) The Noerr-Pennington doctrine and the "sham litigation" exception are inapplicable to FDCPA claims

16.     The Noerr-Pennington doctrine was created in the antitrust context to guarantee citizens their First Amendment right to petition the government for redress without fear of *antitrust* liability. Balt. Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398 (4th Cir. 2001). The

---

33 In Heintz, the Supreme Court unanimously concluded that the FDCPA "does apply to lawyers engaged in litigation," id. at 294, based on the FDCPA's amended definition of debt collector and the fact that Congress repealed any exemption for lawyers "in its entirety, without creating a narrower, litigation-related exemption to fill the void." Id. at 294-95. In the wake of Heintz v. Jenkins, it is clear that "all litigation activities, including formal pleadings, are subject to the FDCPA," with certain limited exceptions that are not applicable here. Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007) (emphasis added). Not a single court, state or federal, over the FDCPA's thirty-year history, has held that the Act is unconstitutional as applied to litigation conduct.

doctrine was further extended in the *antitrust* context in Prof'l Real Estate Investors, Inc v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993), where the Supreme Court created a two-part definition of "sham" litigation. The Court required that the lawsuit be both objectively baseless and, if so, that it conceals an attempt to interfere directly with the business relationships of a competitor through the use of governmental process as an anticompetitive weapon. Id. at 60-61.

17.     Although the Supreme Court has also applied the Noerr-Pennington doctrine in a lawsuit filed under the National Labor Relations Act, Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743–744 (1983), it has never applied it in the context of a lawsuit under a federal consumer protection statute, like the FDCPA. Because the FDCPA applies to debt collection lawyers involved in litigation, as here, see Heintz v. Jenkins, 514 U.S. 291, 294 (1995), the application of Noerr-Pennington to entities whose litigation activity is expressly covered by the FDCPA would vitiate the FDCPA.

18.     Defendants make several disingenuous and meritless arguments in order to circumvent the great weight of authority on the inapplicability of the Noerr-Pennington doctrine to their conduct. First, Defendants argue that their conduct does not fall under doctrine's "sham litigation" exception, which exempts wholly baseless antitrust litigation from the protections of Noerr-Pennington. But the "sham litigation" exception has never been extended to cover debt-collection litigation activities alleged to violate the FDCPA. Defendants plainly attempt to mislead the Court by stating that one district court in this circuit "analyzed the Noerr-Pennington doctrine in the context of FDCPA claims." Cavalry Def. Mem. of Law at 14 (citing Sykes v. Mel Harris & Assocs., 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010)). But the defendants in Sykes only raised the Noerr-Pennington doctrine as a defense to plaintiff's *civil RICO and fraud claims, not*

35

*to the FDCPA claims*. See Sykes, Case No. 09-cv-8486 (DC), (ECF #43), Leucadia Def. Mem of

Law. at 34-35 ("Plaintiffs' attempt to create liability for fraud and RICO based on the actions of

the Leucadia Defendants in the state courts fails under the Noerr-Pennington doctrine")

(emphasis added). This is underscored by the Leucadia Defendants' citations to case law

applying Noerr-Pennington almost exclusively in the RICO context, and not at all in the FDCPA

context. *Id.* Similarly, Hartman v. Great Seneca Fin. Corp., 569 F.3d 606 (6th Cir. 2009), does

not recognize the doctrine's applicability to FDCPA claims, as asserted by Defendants. The

Sixth Circuit merely assumed for the sake of argument the applicability of the doctrine, but then

proceeded to hold that the First Amendment would not protect the allegedly false statements

made by Great Seneca in the course of litigation. Id. at 616. In sum, the "sham litigation"

exception in the Noerr-Pennington doctrine has *never* been recognized by a federal court as

applicable in an FDCPA context.

19.        Defendants' argument has been raised and rejected in a series of recent decisions.[34]

---

34 Delawder v. Platinum Fin. Servs. Corp., 443 F. Supp. 2d 942, 950 (S.D. Ohio 2005) (finding that even if
immunity under the right to petition could be extended to FDCPA claims, it would not provide immunity for filing
complaints knowing that they were unfounded); Kelly v. Great Seneca Fin. Corp., 443 F. Supp. 2d 954, 959-60
(S.D. Ohio 2005) (finding that the Petition Clause argument runs parallel to the argument based on common-law
litigation immunity, and that both arguments run counter to the Supreme Court's decision in Heintz v. Jenkins);
Gionis v. Javitch, Block, Rathbone, LLP, 2007 WL 1654357, at *2 (6th Cir. 2007) (rejecting law firm's argument
that the right to petition under the First Amendment immunized it from FDCPA liability for litigation conduct); Lee
v. Javitch, Block & Rathbone, 484 F. Supp. 2d 816, 821-22 (S.D. Ohio 2007) ("Defendants' immunity/First
Amendment/right to petition issues have been exhaustively addressed in the cases cited, and [the debt collector]
raises no new arguments. Therefore, the Court again finds no merit in [the debt collector's] claims of immunity, and
overrules the Defendants' motion based on those arguments."); Williams v. Javitch, Block & Rathbone, 480 F.
Supp. 2d 1016 (S.D. Ohio 2007) ("The immunity/First Amendment/right to petition issues have been exhaustively
addressed in the cases cited above. JB & R's current motion raises no new arguments. Therefore, the Court again
finds no merit in JB & R's claims of immunity and unconstitutionality, and overrules the motion to dismiss based on
those arguments."); Gionis v. Javitch, Block & Rathbone, 405 F. Supp. 2d 856, 864 n.3 (S.D. Ohio 2005)
("Defendant also argues that, to the extent it is immune from suit for statements made in the course of litigation
pursuant to the First Amendment, it is also immune from suit under the petition and speech clauses of the Ohio
Constitution. Having rejected Defendant's First Amendment immunity argument, the Court also rejects this
argument."); DIRECTV, Inc. v. Cavanaugh, 321 F. Supp. 2d 825 (E.D. Mich. 2003) (extensively discussing Petition
Clause's jurisprudence in the context of collection demands and observing that it "is difficult to see how subjecting
[the defendant] to liability would chill its right to petition the government and seek redress" because the defendant

These decisions have emphasized that (1) the Petition Clause, like the right to free speech, is not absolute, and that the unconscionable, deceptive, and abusive conduct regulated by the FDCPA therefore falls outside constitutional protection; and (2) that the Supreme Court's decision in Heintz v. Jenkins, because it addressed the very conduct at issue in such arguments, is entitled to considerable weight and forecloses any narrowing interpretation of the statute. In addition, several courts have rejected arguments that presented an amalgam of common-law litigation privilege and First Amendment Petition Clause arguments. See, e.g., Hartman v. Asset Acceptance Corp., 467 F. Supp. 2d 769 (S.D. Ohio 2004); Blevins v. Hudson & Keyse, Inc., 395 F. Supp. 2d 655 (S.D. Ohio 2004); Barany-Snyder v. Weiner, 2007 WL 210411, at *10 (N.D. Ohio 2007).

### (2) Defendants' conduct in any case rises to the level of "sham litigation"

20.     But even assuming *arguendo* that the "sham litigation" exception is applicable, Defendants' conduct would not be covered because there is no authority in any federal court holding that "sham litigation" fails to encompass filing a debt collection lawsuit where a party lacks standing. The Defendants cite several cases purportedly contrary to this view, but the cases are entirely irrelevant to the FDCPA context. Indeed, both cases concern *antitrust standing* under the Clayton Act. In both Balt. Scrap Corp. v. David J. Joseph Co., 237 F.3d 394 (4th Cir. 2001) and Liberty Lake Invs. v. Magnuson, 12 F.3d 155 (9th Cir. 1993), the Fourth Circuit and the Ninth Circuit examined whether the surreptitious solicitation and financing of litigation by third parties constituted "sham litigation." Balt. Scrap Corp., 237 F.3d at 396; Liberty Lake Invs., 12 F.3d at 156. Here, there are no allegations of the covert financing of litigation by third parties for

---

was alleged to have made false or misleading statements; "at best, it will encourage the company to investigate carefully its accusations and be precise in the language it uses" in future cases).

the purpose of business interference. Rather, Plaintiffs have alleged that the Defendants systematically filed and prosecuted thousands of collection lawsuits without having standing to do so. Plaintiffs' First Amended Compl., ¶ 1. Defendants simply sued on behalf of plaintiff-entities that were in the Defendants' family, but did not have standing to sue. This case could not be more different than <u>Balt. Scrap</u> or <u>Liberty Lake</u>.

21.          Defendants next raise two irrelevant cases to suggest that having standing to sue is either not important or doesn't rise to the level of "sham litigation." But neither case supports Defendants' assertion. Defendants cite to <u>Renne,</u> but as previously argued, Renne is of no help to Cavalry.[35] Defendants next raise <u>Wells Fargo Bank Minn., N.A. v. Mastropaolo,</u> 42 A.D.3d 239 (2d Dept. 2007) for the proposition that standing should not be a basis for the sham litigation exception. But Defendants are attempting to connect two dots that have never been connected by any federal court. All the Second Department held in <u>Mastropaolo</u> is that a party's alleged lack of standing to commence a foreclosure action is a defense that is waived where the defendant raised the issue for the first time in an attorney's affirmation submitted in opposition to the plaintiff's motion for summary judgment. <u>Id.</u> at 240. The case is therefore inapposite.

### (3) **Holding Defendants accountable under the FDCPA for filing thousands of lawsuits in which it did not have standing is not an "absurd result"**

22.          Defendants' final argument in this area is that an FDCPA claim based upon a legal conclusion concerning standing would produce an absurd result and fall within the "implicit exceptions" to the FDCPA discussed in <u>Heintz</u> and <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,</u> 130 S. Ct. 1605 (2010). Defendants stretch mightily to make this argument, which is

---

35 Interestingly, Cavalry does not cite to Renne to argue that CPS actually had standing to sue, just for the proposition that Noerr-Pennington should apply.

itself absurd and meritless for the principal reason that legal accountability under the FDCPA for the systematic filing of thousands of collection lawsuits in which CPS lacks standing would clearly not be an "absurd result." Such accountability is exactly what the FDCPA envisions. Defendants again cite to the Renne case in an attempt to demonstrate that the legal issues in this case have been entirely foreclosed because of *one case* which the court decided on the basis of a different operative assignment agreement. See above discussion of Renne. The remainder of Defendants' argument in pages 18-19 of its brief do not even merit a response, principally because Plaintiffs are unable to make any sense of the argument presented.

## I.   THE COURT SHOULD NOT ABSTAIN UNDER COLORADO RIVER

23.     Because Plaintiff Goldstein's NYC Civil Court case is not a "parallel proceeding" and exercising abstention would result in piecemeal proceedings, the "exceptional circumstances" necessary for the exercise of abstention under Colorado River are not present. Defendant Cavalry asks this Court to exercise its discretionary power to abstain from exercising jurisdiction over Plaintiff Goldstein's – and only Goldstein's claims – pending some unknown future event in the state debt-collection matter Cavalry filed against Goldstein. Plaintiffs make this request under the Colorado River abstention doctrine. Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

24.     "The rule is well recognized that the pendency of an action in the state system is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Chase Breton Health Servs., Inc. v. Maryland, 411 F.3d 457, 462 (4th Cir. 2005) (internal quotations and citations omitted). Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them, Colorado River, 424 U.S. at 817. "The doctrine of abstention ... is an

39

extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Ambrosia Coal & Constr. Co. v. Pages Morales, 368 F.3d 1320, 1331 (11th Cir. 2001) (quoting Colorado River, 424 U.S. at 813). Furthermore, "Colorado River abstention is permissible in fewer circumstances than are the other abstention doctrines...." Id. The inquiry as to whether a district court may abstain depends on whether there are (1) parallel proceedings, and (2) exceptional circumstances warranting abstention. Colorado River, 424 U.S. at 818. Cavalry's state-court lawsuit against Goldstein II is not parallel with this case, and there are not "exceptional circumstances" warranting abstention. Id. at 813. "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule." Id. Here, the factors to be considered in the analysis weigh against abstention.

25.     ***Parallel proceedings.*** "The principles of Colorado River are to be applied only in situations involving the contemporaneous exercise of concurrent jurisdictions." Dittmer v. County of Suffolk, 146 F.3d 113, 117 (2d Cir. 1998) (internal quotation marks omitted). "Therefore, a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River." Id. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Day v. Union Mines Inc., 862 F.2d 652, 655 (7th Cir. 1988) (internal quotation marks omitted).

26.     Here, both Cavalry and Goldstein are parties to a Civil Court action, but the law firms for Cavalry and the lawyers for those law firms are not parties – they are counsel of record. That fact is not dispositive of the issue, as complete identity between suits is not required. Balsly v. West Michigan Debt Collections, Inc., No. 11cv642, 2012 WL 628490, *10 (E.D. Va. Feb. 27, 2012). But Goldstein could not assert his claims against Cavalry's law firms and their attorneys in the

40

Civil Court case without creating a conflict of interest that might disqualify them as counsel. Id. "Divergent issues of this type tend to suggest that, although *some* of the parties are the same, the *interests* of those parties in the two different cases are not parallel." Id. Although Goldstein may have rights against Cavalry and its law firms and their attorneys in Civil Court, asserting those claims in state court might set this case back.

27.    There are similar, but not identical, factual issues in the two cases. The Civil Court case arises out of the same consumer-credit transaction involving Goldstein, which Cavalry claims to have purchased under assignment. But there are very different remedies for Goldstein here than are available to him in the Civil Court case. In Civil Court, Goldstein defends himself as a debtor against a creditor seeking to enforce a credit agreement. As a defendant in that case, Goldstein asserts affirmative defenses, which might relieve him of liability, but will not entitle him to damages. Here, under the FDCPA, Goldstein seeks affirmative relief for claims that would entitle him – and the members of a class – to statutory damages, actual damages, and attorney fees – none of which is available to him in the Civil Court case.

28.    The E.D. Virginia FDCPA case of Balsly v. West Michigan Debt Collections, Inc., 2012 WL 628490, is instructive on this issue. There, the court found that a state-court case was not a "parallel proceeding" because the cases litigate different interests between slightly different parties, the remedies sought are different, and only the federal-court case would be tried by a jury. Id. at 11. Here, similarly, the parties are different, the remedies sought are different, and only the federal court allows for recovery on a class-wide basis.

29.    The decision by the Eleventh Circuit in Acosta v. James A. Gustino, P.A., 2012 WL 2017337 (11th Cir. 2012) (not selected for publication), which appears to be the only U.S.

41

Circuit Court decision to discuss <u>Colorado River</u> abstention in the context of an FDCPA case, is equally instructive. In <u>Acosta</u>, the Eleventh Circuit reversed the district court, holding that the fact that the inclusion of the attorneys for the creditor as defendants in the federal action – when they were not parties to the state action – was sufficient to render the two actions dissimilar and, therefore, not parallel. In the words of the Eleventh Circuit: "the key to the federal case is not only whether the debt was enforceable but also whether the . . . conduct [of the creditors' attorneys] when collecting that debt complied with the Fair Debt Collection Practices Act. This raises some doubt about whether resolution of the State Action would decide this case." <u>Id.</u> at *2. Furthermore, the Eleventh Circuit held that it was not sufficient for "substantially similar parties" to be involved in both actions – that is, just because the attorneys for the creditors are parties to the federal lawsuit does not make the state collection action and the federal FDCPA action into "parallel proceedings" in the context of "a narrow abstention doctrine" like that under <u>Colorado River</u>.

30.    ***Exceptional circumstances.*** Even assuming that the Civil Court case and the federal court cases are "parallel proceedings," this case does not present the "exceptional circumstances" that would warrant abstention. Under the <u>Colorado River</u> doctrine, federal courts may abstain in favor of pending state-court actions only in limited, exceptional circumstances. <u>Colorado River</u>, 424 U.S. at 818-19. To determine whether abstention is proper, a federal court should consider the following factors when determining whether to abstain in favor a state court action: (1) the assumption of jurisdiction by either court over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision, and (6) whether the state

42

court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir. 1996) (citations omitted).

31.     Factor one implicates *in rem* jurisdiction, which is not an issue here. The second factor asks whether the federal forum is convenient. The distance between the New York City Civil Courts and the federal courthouse in Brooklyn is inconsequential. That is, Cavalry can point to no prejudice to having to travel to Downtown Brooklyn. Factor three directs the Court to consider the impact of piecemeal litigation. Contrary to Cavalry's argument on this point, "piecemeal litigation" is inevitable in this case, because Goldstein has not asserted his FDCPA claims in the Civil Court case. Under the FDCPA, Goldstein has the right to pursue his claim regardless of whether he is found liable on the debt in the Civil Court case – the two rights are not coterminous. Granting abstention to Cavalry would also require Plaintiffs to litigate damages twice if both claims proceed: the action in Civil Court concerns the damages allegedly owed by Goldstein as debtor to Cavalry; here, Goldstein seeks damages for the Defendants' violations of the FDCPA. Thus, the basis of the damages and the nature of the claims are distinct. Even more important, waiting for a determination on the Civil Court action involving Cavalry – and only Cavalry – would put on hold determining the liability and damages of all the claims Goldstein has asserted against Cavalry and its law firms and their attorneys while the simple issue of standing waits for determination in state court.

32.     But overshadowing every other factor here is that this is a class action with multiple class representatives pursuing affirmative claims against Cavalry, its law firms and their attorneys. In other words, right now this entire case is to determine the rights of not only Goldstein, but those of three other litigants and thousands of other New Yorkers. Carving Goldstein – and only

43

Goldstein – out of the case would result in piecemeal litigation by having his claims litigated in a different forum, while everyone else's claims – and those of the class members – are litigated in federal court. Moreover, were Goldstein to assert class-action counterclaims in state court, those claims could not be adjudicated in NYC Civil Court, but the case would have to be removed to NYS Supreme Court. Removal to Supreme Court would only serve to restart the state-court case from the beginning while stopping Goldstein's claims in federal court. Thus, exercising <u>Colorado River</u> abstention would not serve judicial economy – it would, instead, multiply the proceedings and create even greater piecemeal adjudication.

33.     The fourth factor is neutral. The order of filing of the filing is irrelevant because both cases are at their initial stages. If anything, this factor weighs against abstention because the parties have already cued up the essential legal issues in this motion to dismiss under Rule 12(b)(6), which should result in a more expeditious determination of any underlying state-court issues here in federal court. The fifth factor, which asks whether federal law is implicated, weighs heavily against abstention. The Civil Court will address issues of state law involving the collection of the debt, but Goldstein's claims involve class-wide issues of federal and state law. Cavalry argues that the fifth factor favors abstention, because the Civil Court case will completely dispose of this matter. But Goldstein's claims are likely to proceed in this Court regardless of the outcome in Civil Court. In other words, Cavalry would argue issue preclusion were it to prevail in state court, but merely prevailing in state court on the issue of standing would not mean that Cavalry would prevail on the issue of whether the misnaming of the creditor in Civil Court is false, misleading, and unconscionable under the FDCPA – or under the New York Deceptive Practices Act, GBL sec. 349. Finally, the sixth factor weighs against abstention.

44

According to this factor, the Court must consider whether the NYC Civil Court can adequately protect Goldstein's rights, at least to the extent such rights will be adjudicated in that case. While the Civil Court is capable of adjudicating any *defenses* to the underlying debt, it cannot adjudicate the federal rights that Goldstein might have because he has not raised those claims as a counterclaim. Balsly, 2012 WL 628490, at *14. Thus, it cannot be said that Civil Court can adequately protect Goldstein's rights, since his FDCPA rights are not even addressed in that litigation.[36]

## J.   PRAYER

34.    WHEREFORE, Plaintiffs pray for the Court to Deny Defendants' Motions to Dismiss.

Dated: Brooklyn, New York
         September 10, 2012

Respectfully submitted,

/s/

Ahmad Keshavarz
ATTORNEY FOR PLAINTIFFS
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

---

36 Only one case cited by Cavalry, Book v. Mortgage Electronic Registration Systems, 608 F.Supp. 2d 277 (D. Conn. 2009), is an FDCPA case. But a close reading of Book shows that the Court found no jurisdiction over the defendant because it was not a debt collector under the FDCPA. Moreover, the Court found that the plaintiff, Book, had filed a set of objections to a state-court mortgage-foreclosure action that precisely matched the affirmative claims filed by Book as plaintiff in the federal-court suit. In other words, after losing all of the relevant motions in state court, Book filed a federal-court suit based on the same claims asserted unsuccessfully as defenses in state court. Thus, there was complete identity of state and federal parties and claims.

45