UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JANICE KEARNEY, SAMANTHA RODRIGUEZ, :
GWENDOLYN BIRD, and LAURIE GOLDSTEIN on :
behalf of themselves and all others similarly situated, :
: **MEMORANDUM AND ORDER**
Plaintiffs, : 12-CV-00860 (DLI) (RML)
:
-against- :
:
CAVALRY PORTFOLIO SERVICES, LLC, :
CAVALRY SPV I LLC, CHOI LAW OFFICE PLLC, :
DANIELLE C. CHOI, SCHACHTER PORTNOY, LLC, :
CRAIG FAYE AND JOHN DOES # 1-10, :
:
Defendants. :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiffs Samantha Rodriguez, Janice Kearney, Gwendolyn Bird, and Laurie Goldstein filed the instant action against Defendants Cavalry Portfolio Services, LLC ("CPS"), Cavalry SPV I, LLC ("SPV I"), Choi Law Office PLLC, Danielle C. Choi (together with Choi Law Office PLLC, "Choi Defendants"), Schachter Portnoy, LLC, Craig Faye (together with Schachter Portnoy LLC, "Schachter Defendants"), and John Does # 1-10, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), New York General Business Law § 349 ("NYGBL § 349"), and New York Judiciary Law § 487 ("NYJL § 487"). The action was commenced on behalf of the four named plaintiffs and a putative class. Plaintiffs claim that Defendants violated federal and state law by filing debt collection suits without standing and wrongfully representing CPS as the lawful owners of the debts at issue. Defendants each move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted or, in the alternative, for the Court to abstain from hearing the matter. For the reasons set forth below, the motion to dismiss is granted.

# BACKGROUND[1]

The named Plaintiffs in this suit claim that Defendants violated the FDCPA by pursuing litigation in the name of CPS to collect debts that actually belong to SPV I. Plaintiffs allege that SPV I properly purchased title to outstanding debts from various creditors, and assigned servicer CPS "rights to seek to collect the debt, but . . . not . . . title or ownership to the debt, which remains with SPV I." (Plaintiffs' First Amended Complaint and Jury Demand ("Am. Compl.") ¶ 12, Dkt. Entry No. 45.) The other named Defendants are attorneys and law firms who represented CPS in the debt collection suits. (*Id.* ¶¶ 6-9.)

Although Plaintiffs recount the particular circumstances of each of the named Plaintiffs' collection lawsuits, the central contention among Plaintiffs is that, under New York law, an assignee must have some legal or equitable title to the thing assigned in order to be the real party in interest in order to have standing to sue. (*See* Am. Compl. ¶¶ 48, 66, 77-78, 109-110.) According to Plaintiffs, "[m]erely granting the power to sue on or enforce a claim or set of claims is not enough for a valid assignment." (*Id.* ¶ 48.) Plaintiffs allege that, in order to constitute a valid assignment under New York law, the assignor must be entirely divested of all control over the thing assigned. (*Id.*) Plaintiffs also allege that an assignment of servicing and collection rights, as is the case here, is insufficient to confer standing to CPS. (*See id.* ¶ 78.) Thus, according to Plaintiffs, the collection lawsuits instituted by CPS against Plaintiffs are in violation of the FDCPA, NYGBL § 349, and NYJL § 487. Defendants counter that, *inter alia*,

---

[1] The Court takes the following facts from the Plaintiffs' First Amended Complaint and Jury Demand. As discussed *infra*, the Court may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that Plaintiffs relied on in bringing suit and that are either in Plaintiffs' possession or that Plaintiffs knew of when bringing suit, and matters of which judicial notice may be taken. When these facts are well pled, the Court assumes them to be true for purposes of deciding this motion and construes them in the light most favorable to Plaintiffs, the non-moving party.

Plaintiffs' claims are time-barred under the FDCPA, CPS has standing to sue under New York law, and CPS properly represented its ownership interests in the debt.

I.  **Plaintiff Rodriguez**

On August 28, 2010, CPS through its prior counsel[2] filed a complaint in the Civil Court of the City of New York, Bronx County ("Bronx Civil Court") seeking to enforce a default judgment against Samantha Rodriguez that had been entered in Orange County Court of Florida on January 30, 2004, for a sum of $9,519.18 plus interest. (Am. Compl. ¶¶ 26-27.)[3] The complaint contained a signed verification by the Assistant Vice President of CPS stating "that the contents of the foregoing Complaint are true of my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true." (*Id.* ¶ 28.) The complaint further stated that CPS, "through assignment, is the lawful owner of a consumer credit contract executed by the Defendant(s)." (*Id.* ¶ 29.) Plaintiffs in the instant case allege that "CPS never served Ms. Rodriguez with the summons and complaint. Instead, CPS filed a false affidavit of service with the court clerk, and, based on that false affidavit, was able to obtain a default judgment." (*Id.* ¶ 31.)

Samserv, Inc. process server Benjamin Lamb claimed that, on December 6, 2010, he delivered the summons and complaint "to an unidentified man at 1749 Grand Concourse, Apt. 8F, Bronx, NY," who confirmed that Ms. Rodriguez resided at that address. (*Id.* ¶ 32.) On February 25, 2011, the Choi Defendants, new counsel for CPS, sought default judgment on behalf of CPS, attaching an affidavit, which, according to Plaintiffs, was "designed to deceive the court to

---

[2]  The Thomas Law Firm filed each of the complaints in the underlying state court actions. Plaintiff has not named that firm or its individual counsel from that firm because of the time that has elapsed.

[3]  The Court is aware that the August 28, 2010 complaint sought 9% interest, in contrast to the 7% interest specified in the January 30, 2004 judgment. (Am. Compl. ¶ 27, 52.) Neither Plaintiffs nor Defendants discuss this difference in amount or the import, if any, of New York state law. *See* N.Y. C.P.L.R. 5004 (McKinney) (setting interest rates on judgments at 9%). Accordingly, Plaintiffs' passing references to this discrepancy with regard to Plaintiff Rodriguez, without more, is insufficient for an FDCPA claim.

3

believe that the purported 'assignments' transferred to CPS a right to enter judgment in its own name." (*Id.* ¶ 33.) A default judgment against Rodriguez for $14,528.28 was entered on March 4, 2011. (*Id.* ¶ 36.) Rodriguez contends that she was not aware of CPS's suit against her until her housing application was denied on July 15, 2011, due to the judgment's presence on her credit report. (*Id.* ¶ 37.)

On July 18, 2011, Rodriguez filed a *pro se* Affidavit in Support of an Order to Show Cause to Vacate a Judgment for Failure to Answer in Bronx Civil Court, stating that she did not receive service of process because she had not resided at the 1749 Grand Concourse address since June 2010. (*Id.* ¶ 38.) Bronx Civil Court Judge Lizbeth Gonzalez vacated the default judgment on August 3, 2011, and directed Rodriguez to file an answer, which Rodriguez did later the same day. (*Id.* ¶ 41.) On August 31, 2011, Judge Gonzalez ordered CPS to answer discovery requests and provide a complete chain of assignment. (*Id.* ¶¶ 41-42.) CPS's collection lawsuit was dismissed with prejudice on November 23, 2011, because CPS was not prepared for trial. (*Id.* ¶ 53.)

## II. Plaintiff Kearney

CPS filed a debt collection suit against Janice Kearney on June 10, 2010 in the Civil Court of the City of New York, Kings County ("Brooklyn Civil Court"). (*Id.* ¶ 55) Kearney filed an answer on August 18, 2010, and CPS moved for summary judgment on January 5, 2011. (*Id.* ¶¶ 57, 60.) The motion for summary judgment was denied on March 16, 2011; Brooklyn Civil Court Judge Katherine Levine ruled that CPS failed to prove "the assignment of the debt from the original creditor to CPS." (*Id.* ¶ 67.) CPS filed a certificate of readiness for trial on April 14, 2011, but "was able to adjourn the first trial setting in order to continue to drag out the litigation," according to Plaintiffs. (*Id.* ¶ 68.) Kearney entered into a stipulation with CPS,

which "threatened to enter judgment against Kearney in the name of CPS for the full amount sought in the collection lawsuit if Kearney did not pay the money to CPS." (*Id.* ¶ 69.) The stipulation was entered into after Plaintiffs commenced this action, Kearney was represented by counsel, and the settlement amount was $1.00.[4] (Declaration of Craig Faye, Ex. A at 1, Dkt. Entry No. 52.)

### III. Plaintiff Bird

CPS filed a debt collection suit against Gwendolyn Bird in the Civil Court of the City of New York, Richmond County, on August 9, 2010; Bird filed her answer and discovery requests on August 14, 2010. (Am. Compl. ¶¶ 72-73.) The Choi Defendants moved for summary judgment on behalf of CPS on April 11, 2011, a motion that was denied on May 23, 2011. (*Id.* ¶¶ 75, 81.) As of the date of the Amended Complaint, this action was still pending. (*Id.* ¶ 83.)

### IV. Plaintiff Goldstein

CPS filed a debt collection suit against Laurie Goldstein in New York State Supreme Court, Westchester County ("Westchester Court"), on January 21, 2011. (*Id.* ¶ 86.) Plaintiffs allege that "CPS never served Ms. Goldstein with the summons and complaint. Instead CPS filed a false affidavit of service with the clerk." (*Id.* ¶ 87.) CPS moved for default judgment, which was granted for $11,412.37, and served an income execution on Goldstein's employer on July 22, 2011. (*Id.* ¶¶ 88-90.) Goldstein filed an order to show cause why the default judgment should not be vacated for failure to serve, and to dismiss the action on November 17, 2011. (*Id.* ¶ 93.) In contrast to the server's description of Goldstein as brown-haired, age 27, five foot four to five foot six inches, and a weight of 110 to 120 pounds, Goldstein stated in her affidavit: "I do not look 27 and am actually 55. I have dirty blonde hair, not brown hair. My weight is 240

---

[4] While Plaintiffs did not include the settlement among their exhibits attached to the Amended Complaint, the settlement was referred to and relied upon by the Plaintiffs in that pleading. Therefore, the Court includes these clarifying facts based on the exhibit submitted by the Schachter Defendants.

5

pounds, not 110-120. My height is 5'3", not 5'4" to 5'6"." (*Id.* ¶¶ 94-95.) Goldstein's order was granted on January 31, 2012, and CPS's suit was dismissed after two hearings in the Westchester Court. (*Id.* ¶¶ 98-99.) CPS filed a second debt collection suit against Goldstein on May 13, 2011. (*Id.* ¶ 102.) Goldstein filed her answer on June 28, 2011, and CPS responded to discovery requests on August 3, 2011.[5] (*Id.* ¶¶ 104-105.)

## V. Class Action Allegation

Plaintiffs also seek to certify a class action under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs assert that there are thousands of debt collection lawsuits pending with common questions of law or fact that predominate over any questions affecting only the individual class members. (*Id*. ¶¶ 114-21.)

## DISCUSSION

## I. Motion to Dismiss Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

---

[5] The Court has not been provided with additional information regarding the current disposition of this second collection lawsuit against Goldstein and has not been able to obtain such information from the New York State Unified Court System.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).

## II.     FDCPA Claims

Under the FDCPA, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false representation of "the character, amount or legal status of any debt," among other possible infractions. 15 U.S.C. § 1692e. Plaintiffs allege that Defendants materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f. (Am. Compl. ¶ 133.) In the Second Circuit, compliance with the FDCPA is evaluated according to the "least sophisticated consumer" standard. *Jacobsen v. Healthcare Fin. Servs., Inc.*, 516 F. 3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F. 2d 1314, 1318 (2d Cir. 1993)). The FDCPA is violated where the debt collection instrument is presented in a manner that would leave a hypothetical least sophisticated consumer "uncertain as to the meaning of the message." *Weiss v.*

7

*Zwicker*, 664 F. Supp. 2d 214, 216 (E.D.N.Y. 2009). Plaintiffs' claims may be separated into alternative theories of violation: (1) Defendants violated the FDCPA by bringing suit without having standing to do so, or (2) if CPS did have standing, it nevertheless violated the FDCPA by representing itself as the "lawful owner" of the accounts in the debt collection suits.[6] (*See* Am. Compl. ¶¶ 12, 18.)

### A. Statute of Limitations

The statute of limitations for an FDCPA claim is one year from the date of the violation. 15 U.S.C. § 1692k(d). The point of accrual for the violation may be based on the filing date of the allegedly improper suit, *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998), or the date when default judgment was entered. *See Coble v. Cohen & Slamowitz*, 824 F. Supp. 2d 568, 570 (S.D.N.Y. 2011); *see also Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413, 421 (S.D.N.Y. 2010). The original complaint in the instant case was filed on February 22, 2012; thus, all claims accruing before February 22, 2011 are time barred.

The underlying collection suit against Rodriguez was filed on August 28, 2010, and the default judgment entered on March 4, 2011. (Am. Compl. ¶¶ 27, 36.) The collection suit against Kearney was filed on June 10, 2010; against Bird on August 9, 2010; and against Goldstein on January 21, 2011, and May 13, 2011. (*Id.* ¶¶ 55, 72, 86, 102.) Plaintiffs contend that the statute

---

[6] While Plaintiffs make note of "sewer service" regarding Plaintiff Rodriguez's case, Samserv is not a defendant in this case and Plaintiffs do not claim that any of the named Defendants are vicariously liable for Samserv's alleged failure to serve. (Am. Compl. ¶¶ 31-32, 40.) *See Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413, 423 n.9 (S.D.N.Y. 2010). Furthermore, the alleged conduct of Samserv is not covered by the FDCPA, as the term "debt collector" under the FDCPA "does not include . . . any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." *See* 15 U.S.C. § 1692a(6)(D). Plaintiffs also state, "CPS never served Ms. Goldstein with the summons and complaint. Instead, CPS filed a false affidavit of service with the clerk," but do not provide any specific factual allegations in relation to this claim. (Am. Compl. ¶ 87.) Throughout the First Amended Complaint, Plaintiffs cite lack of standing and misrepresentation of ownership as the sole bases for their claims. Therefore, the Court does not consider whether Defendants are liable for FDCPA violations premised on improper service of process.

of limitations should be tolled for sewer service, which refers to the intentional failure to provide service of a complaint on a party to a lawsuit, in order to prevent that party from having a fair opportunity to respond. (*See* Plaintiffs' Response in Opposition to All Defendants' Motions to Dismiss ("Pl.s' Opp. Mem.") at 19, Dkt. Entry No. 55.)

FDCPA claims are subject to equitable tolling where a plaintiff establishes: "(1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to a lack of diligence on his part." *Sykes*, 757 F. Supp. 2d at 422 (citing *N.Y. v. Hendrickson Bros., Inc*, 840 F. 2d 1065, 1083 (2d Cir. 1988)). Equitable tolling is available where a party does not discover the action exists until after default judgment is entered due to sewer service. *Sykes*, 757 F. Supp. 2d at 422; *see also Bailey v. Glover*, 88 U.S. 342, 349-50 (1874) ("To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.").

Plaintiffs Rodriguez and Goldstein allege that they never were served properly in the initial suits. (Am. Compl. ¶¶ 31-33, 36-41, 93-99.) Rodriguez claims she first became aware of the underlying suit on July 15, 2011, when she was denied housing, whereas Goldstein claims to have first received notice through the income execution served on her employer on July 22, 2011. (Am. Compl. ¶¶ 37, 90; Pl.s' Opp. Mem. at 19.) The legitimacy of Rodriguez and Goldstein's assertions are supported by civil court findings that default judgments were improperly entered against both Rodriguez and Goldstein in the underlying state lawsuits against them. Bronx Civil Court Judge Lizbeth Gonzalez vacated the default judgment against Rodriguez on August 3,

2011, and directed Rodriguez to file an answer, which Rodriguez did later the same day. (Am. Compl. ¶ 41.) Goldstein filed an order to show cause why the default judgment should not be vacated for failure to serve, and to dismiss the action on November 17, 2011, which was granted and eventually resulted in the dismissal of CPS's suit. (*Id.* ¶¶ 93, 98-99.) Based on these facts, the Court finds the tolling of the statute of limitations is appropriate as to Rodriguez and Goldstein. Based upon the dates that they first became aware of the underlying suits, Rodriguez and Goldstein's current FDCPA claims fall within the one-year window.

Kearney acknowledges that she filed her answer to, and thus had notice of, the debt collection suit on August 18, 2010, while Bird filed an answer in her underlying CPS suit on August 14, 2010. (*Id.* ¶¶ 57, 73.)[7] These dates fall outside the statute of limitations, therefore Kearney's and Bird's FDCPA claims are time barred and dismissed, as against all defendants.

## B. CPS's Standing to Sue

The language of the transfer of Rodriguez's debt from DaimlerChrysler to SPV I states that DaimlerChrysler "hereby absolutely sells, transfers, assigns, sets-over and conveys to Cavalry SPV I, LLC . . . (a) *all of* [DaimlerChrysler's] *right, title and interest* in and to each of the Accounts." (*Id.* ¶ 47 (emphasis in the original).) The language of the agreement between SPV I and CPS states that SPV I conveys to CPS "all of [SPV I's] rights to pursue collection or judicial enforcement of obligations under each of [SPV I's] accounts . . . including engagement

---

[7] Plaintiffs' interpretation of the use of a default judgment allegedly obtained through sewer service as a possible date of accrual in *Sykes* is overly expansive. *Sykes* did not hold that "each pleading in a debt collection lawsuit can form the basis for a separate statute of limitations claim" (*see* Pl.s' Opp. Mem. at 23), but stated, "Defendants plausibly violated the FDCPA again when they applied for default judgments [relying on sewer service] against plaintiffs." 757 F. Supp. 2d at 421. To infer from the use of such a default judgment as a date of accrual that *any* legal action, such as a summary judgment motion, serves to reset the statute of limitations is inaccurate. Plaintiffs do not cite any case law to support their assertion that "each motion bringing [Defendants] closer to obtaining a judgment . . . should be a separate discrete act." (Pl.s' Opp. Mem. at 21.) Since Plaintiffs Kearney and Bird do not allege sewer service, applying *Sykes*' reasoning to each motion in their underlying cases as a basis for tolling the statute of limitations would be inappropriate. (Am. Compl. ¶¶ 55-84.) Plaintiffs' arguments concerning chain of title do not demonstrate concealment of the *existence* of a cause of action, the motivating concern in the *Sykes*' three-part inquiry. (Pl.s' Opp. Mem. at 24-25.)

of attorneys and commencement of legal actions reasonably required to enforce said legal actions." (*Id.* ¶ 46.) Plaintiffs allege that the assignment documents between SPV I and CPS regarding Goldstein's debt "contain[] the same limitations on assignment as those for the other named plaintiffs: the right to collect is assigned, but title and ownership of the subject account is not assigned." (*Id.* ¶ 101.)

Plaintiffs do not contest the scope or validity of the transfers from the original creditors to SPV I, only those from SPV I to CPS. Plaintiffs claim that CPS received a power of attorney through these transfers, not a complete transfer of interest; thus, CPS was not the "real party in interest" under New York State law and lacked standing to bring debt collection suits. (*Id.* ¶ 48.) Defendants refute Plaintiffs' assertion that the language in the agreements between CPS and SPV I transferred an interest insufficient to confer standing to CPS. (Reply Memorandum of Law in Further Support of Motion to Dismiss the First Amended Complaint on Behalf of Danielle C. Choi and The Choi Law Offices, PLLC, ("Choi Reply Mem.") at 3, Dkt. Entry No. 57-3.)

New York State law provides that the mere transfer of a power of attorney does not make the recipient the real party in interest or grant standing to file suit. *Spencer v. Standard Chems. & Metals Corp.*, 237 N.Y. 479 (1924). The plaintiff in *Spencer* was found to have a power of attorney, because "[n]o legal title to the claim against the defendant was assigned to him," as his only purpose was to collect the debt for the benefit of the title-holder. *Id.* at 482. The definition of "real party in interest" is set forth as follows:

> If, as between the assignor and assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest. In other words, the plaintiff must have some title, legal or equitable, to the thing assigned.

11

*Id.* at 480-81 (internal citations omitted). Moreover, the difference between a power of attorney and an assignment is not based on particular language, but the intention manifested by the assignor. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997). In the Second Circuit, where the assignor demonstrates an intent to make the assignee the owner of the claim, "[t]he validity of [the] assignment . . . is not affected by the parties' additional agreement that the transferee will be obligated to account for the proceeds of a suit brought on the claim." *Id.* (collecting cases). An assignment of ownership requires "a completed transfer of the entire interest of the assignor." *Id.* (quoting *Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.*, 10 A.D. 2d 372, 376 (4th Dep't 1960)).

Plaintiffs rely on the Circuit Court's assertion in *Advanced Magnetics, Inc.* that "[t]he grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Advanced Magnetics, Inc.*, 106 F. 3d at 18. This statement is distinguishable from the case here, because in *Advanced Magnetics, Inc.*, the assignor did not transfer all of its rights to pursue the claim nor did he even indicate any such intent. *Id.* at 17-19. Instead, the agreements at issue in *Advanced Magnetics* only conveyed "the power to commence and prosecute to final summation or compromise any suits, actions or proceedings," which the Court found to be a transfer of a power of attorney as they did not "purport to transfer title or ownership." *Id.* at 18. The assignor retained the right to his share of proceeds from litigation as well as the right to terminate the power of attorney, rights inconsistent with a total transfer of ownership. *Id.*

Similarly in *Spencer*, a case Plaintiffs also rely upon, the court found that the transfer in question amounted to a power of attorney and not a complete assignment, because the instrument in question merely named plaintiff as the attorney and granted him the power to commence or

12

prosecute an action in his client's name to recover damages. 237 N.Y. at 481. It did not provide the attorney with any legal or equitable interest in the claim. In *Spencer*, the court remarked that, on the face of the instrument in question, "the attorney's duty [was] simply to collect what may be due to [the purported assignor] solely for the latter's benefit and to transmit it to him." *Id*. at 482; *cf. Cardtronics, LP v. St. Nicholas Beverage Discount Center, Inc.*, 8 A.D.3d 419, 420 (2d Dep't 2004) ("Where, as here, the valid assignment of a claim is absolute on its face and the assignor is divested of all control and right to the cause of action, the assignee is the proper party in interest and has the right to commence and prosecute an action in its own name without joining the assignor as a necessary party").

In the instant case, the agreements between SPV I and CPS explicitly assign all rights for the purposes of collection, terms which the Supreme Court notes have given an assignee standing to file suit under New York State law since the 1870s. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 280 (2008) (citing *Meeker v. Claghorn*, 44 N.Y. 349, 350, 353 (1871)). Furthermore, in *Titus v. Wallick*, which the *Advanced Magnetics, Inc.* court cites approvingly, the Supreme Court found that an assignment which "purported 'to sell, assign, transfer and set over' the [right to sue] to petitioner, was sufficient under the New York statutes and authorities to give petitioner dominion over the claim for purposes of suit. . . . [I]ts legal effect was not curtailed by the recital that the assignment was for purposes of suit and that its proceeds were to be turned over or accounted for to another." 306 U.S. 282, 289 (1939).

Plaintiffs repeatedly emphasize that, while the Bill of Sale and Assignment of Account between the underlying creditors and SPV I transferred to the latter all of the creditor's "right, title and interest in and to each of the Accounts," SPV I transferred to CPS "all of Assignor's [SPV I's] rights to pursue collection or judicial enforcement . . . for each of the Assignor's

13

accounts." (Am. Compl. ¶¶ 44-47; *see also* Am. Compl. ¶¶ 64-66, 76-77, 108-109.) Plaintiffs strongly suggest that this difference in language between the original transfer and the later purported assignment is dispositive in determining whether the assignment in question was adequate to confer standing. (*See id.* ¶66.) Plaintiffs are in error.

"Under New York law, no particular words or phrases are necessary to effect an assignment. A valid assignment merely requires a completed transfer of the entire interest of the assignor that divests the assignor of all control over the right assigned." *Wells Fargo Bank Minnesota, N.A. v. Nassau Broad. Partners*, 2003 WL 22339299, at *5 (S.D.N.Y. Oct. 10, 2003) (internal quotation omitted); *see also Caribe Carriers, Ltd. v. C.E. Heath & Co.*, 784 F. Supp. 1119, 1126 (S.D.N.Y. 1992). In the present case, SPV I granted CPS the totality of the rights in question, which the Court does not find to be akin to a power of attorney, but instead "an intention to make the assignee the owner of [the] claim." *Richstone* v. *Chubb Colonial Life Insurance*, 1999 WL 287332, at *6 (S.D.N.Y. 1999) (quoting *Advanced Magnetics, Inc.*, 106 F. 3d at 17).

Moreover, a debt assignment agreement between SPV I and CPS was held to confer standing to CPS for collection litigation by a New York State court in *Cavalry Portfolio Servs., LLC v. Renne*, 27 Misc. 3d 129(A) (N.Y. App. Term 2010). While the state court opinion does not include the exact language of that particular agreement, the court affirmed CPS's standing to file suit regarding a debt that had been "sold" from Mitsubishi to SPV I and "assigned" by SPV I to CPS. *Id.* at *3. Defendants assert that the same "types of assignments" were at issue in *Renne* as in the instant case. (Choi Reply Mem. at 3.) In light of the Supreme Court's holdings concerning the rights of assignees for collection, and specifically conferring standing on the

assignee, the parallels between the agreements in *Renne* and the instant case persuasively demonstrate that CPS indeed had standing to bring collection suits under New York state law.

### C. Representation of Ownership

The Court next considers whether CPS's representation that it was the "lawful owner" of the accounts constitutes a material misrepresentation in violation of the FDCPA. Although Congress did not expressly require that any violation of § 1692e be material, many courts have read a materiality requirement into § 1692e. *See Warren v. Sessoms & Rogers, P.A.*, 676 F. 3d 365, 374 (4th Cir. 2012) (collecting cases). Although the Second Circuit has not expressly adopted this requirement, it has cited *Warren* and other similar cases with apparent approval. *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). One court within this circuit recently expressly held that any violation of § 1692e must be material. S*ee Fritz v. Resurgent Capital Services, LP*, 2013 WL 3821479, at *3 (E.D.N.Y. July 24, 2013) (agreeing that "that only material misrepresentations are actionable under the FDCPA."). This Court also reads a materiality requirement into § 1692e of the FDCPA.

Here, Plaintiffs assert that CPS's claim to be the "lawful owner" of the debts at issue is "false." (Am. Compl. ¶ 18.) While the defendants in *Fritz* did not dispute that they had misrepresented the ownership of the debt at issue, in the instant case, the defendants defend on the grounds that CPS is indeed the lawful owner and did not misrepresent its ownership. *See* 2013 WL 3821479 at *2.

Courts outside of the Second Circuit recently have addressed the legal status of CPS in relation to collection of debts as a result of SPV I assignments using the identical language. A decision from the United States District Court for the Western District of Pennsylvania provides an instructive analysis of the implications of the differing language in the sale between the

original creditor and SPV I and the assignment from SPV I to CPS, under the standards set forth by the Supreme Court in *Sprint*:

> The *Sprint* case makes it plain that assignees-for-collection are not merely agents acting on behalf of their assignors, but are asserting their own proprietary interests and in their own right. In this case, therefore, [CPS] was the valid recipient of [SPV I's] assignment of its interest in seeking collection from [plaintiff's] account . . . while [CPS] might not be considered the "owner" of this account . . . because [SPV I] still retains its other proprietary interests in the account (to the extent it has not assigned them to other entities), even so, [CPS] is nonetheless the "owner" of a valid proprietary interest in it.

*Montalbano v. Cavalry Portfolio, Servs. LLC*, 2013 WL 593988, at *4 (W.D.Pa. Feb. 15, 2013). A judge in the United States District Court for the Northern District of Illinois recently came to a similar conclusion. *See Grant-Hall v. Cavalry Portfolio Servs., LLC*, 2013 WL 855962, at *5 (N.D. Ill. March 6, 2013) ("Here, the assignments plainly evidence an intent to transfer *ownership* to [CPS] of a readily identifiable subject matter—SPV I's rights to pursue collection and judicial enforcement of certain debts.") (emphasis added). While the representation of ownership is material for FDCPA purposes, CPS's assertion did not misrepresent the nature of its interest in the underlying debts, and thus did not constitute a violation of the FDCPA. Therefore, Plaintiffs Rodriguez and Goldstein's FDCPA claims are dismissed as against all defendants.

### III. NYGBL § 349

New York General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any servicing in this state." The statute was enacted "to protect consumers from various forms of consumer fraud and deception," and requires a plaintiff to prove three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Mascoll v. Strumpf*, 2006 WL

2795175, at *9 (E.D.N.Y. Sept. 26, 2006) (internal citations omitted). Section 349 differs from the FDCPA in its standard for consumer injury, as a violation occurs under section 349 where "a reasonable consumer would have been misled by defendant's conduct." *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 315 (E.D.N.Y. 1999) (citing *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F. 3d 629, 636 (2d Cir. 1996)).

Plaintiffs' section 349 claims rely on the same assertions as their FDCPA claims, namely that CPS's collection litigation constituted an illegal practice because CPS lacked standing and incorrectly represented itself as the lawful owner of the debt. (Am. Compl. ¶¶ 134-141.) Because the Court has found that CPS did in fact have standing to bring suit under New York State law and accurately represented its ownership interest in the underlying debts, Plaintiffs fail to plead adequately the second factor. The section 349 inquiry is conjunctive; therefore, the Court need not address the first and third factors. Plaintiffs' section 349 claims are dismissed as against all defendants.

## IV.   NYJL § 487

New York Judiciary Law § 487 provides that an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is guilty of a misdemeanor and is liable for treble damages recoverable in a civil action. Plaintiffs allege that CPS, SPV I, and the named attorney and law firm defendants violated section 487 by bringing and participating in the underlying debt collection law suits and "deceiv[ing] consumers into believing that they had no basis to challenge the claim that CPS had a legal right to bring suit." (Am. Compl. ¶ 149.) Plaintiffs' argument relies extensively on their claim that CPS did not have standing to bring these suits, a claim this Court has rejected. Furthermore, Plaintiffs do not provide any factual allegations explaining why CPS's assertion of standing would cause the

defendants in the underlying suits (the Plaintiffs in the instant case) to believe they "had no basis to challenge" that claim. *See id.* The adversarial nature of the United States' judicial system fundamentally encourages parties to challenge each other's legal arguments, a task that the parties have engaged in extensively in their submissions to this Court.

Plaintiffs further characterize CPS's legal history as a "broad pattern of misconduct [that] goes beyond isolated instances to something systematic and damaging to the legal system itself," but fail to provide any factual allegations supporting this general assertion. (Pl.s' Opp'n. Mem. at 33.) The Second Circuit has noted that a pattern requirement, held by some New York state courts as an additional prerequisite to recovery, "appears nowhere in the text of the statute," and that a defendant may be held liable for "a single intentionally deceitful or collusive act." *Amalfitano v. Rosenberg*, 533 F. 3d 117, 123-24 (2d Cir. 2008). Even if this Court were to have found that CPS lacked standing in the underlying debt collection suits, Plaintiffs do not plausibly plead their section 487 claim, as a lack of standing is a curable procedural defect. *See* N.Y. C.P.L.R. 3025 (providing for amendments to pleadings); *see also* Fed. R. Civ. Pro. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."). Plaintiffs cite no cases supporting the conclusion that a mere lack of standing demonstrates the intent to deceive. Plaintiffs' section 487 claims are dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted and the action is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
July 31, 2014

/s/
DORA L. IRIZARRY
United States District Judge